**Ann ARMSTRONG, Plaintiff,**

v.

**UNITED STATES BUREAU OF PRISONS, et al., Defendants.**

**Civil Action No. 95–1460 (RMU).**

United States District Court, District of Columbia.

Aug. 7, 1997.

---

13. *Building & Constr. Trades Dep't, AFL–CIO v. Donovan*, 712 F.2d at 616.

Ann Armstrong, Austin, TX, pro se.

Claire M. Whitaker, U.S. Attorney's Office, Washington, DC, for Defendnats.

## MEMORANDUM OPINION AND ORDER

### Denying Plaintiff's Motion to Amend the Complaint and Granting Defendant's Motion for Summary Judgment

URBINA, District Judge.

## I. INTRODUCTION

*Pro se* plaintiff Ann Armstrong brings this action seeking damages from the United States Bureau of Prison ("BOP"), several named and unnamed federal agencies,[1] and unnamed individuals under the Privacy Act, 5 U.S.C. § 552a (1996). Plaintiff claims that the BOP denied her the right to access and amend her prison records as provided for under the Privacy Act. This matter comes before the court on defendant BOP's summary judgment; plaintiff's opposition; plaintiff's motion to amend the complaint; and defendant's response to plaintiff's motion to amend the complaint. Upon consideration of the parties' submissions, the applicable law, and the record herein, the court denies plaintiff's motion to amend the complaint as futile and grants defendant BOP's motion for summary judgment.

## II. BACKGROUND

From June 26, 1992 to August 2, 1992, plaintiff was in the custody of the United States Attorney General's Office for conspiracy to commit mail fraud. From August 2, 1992 to November 2, 1996, plaintiff was initially held at the BOP at the Federal Medical Center in Lexington, Kentucky, and later moved to the Federal Prison Camp at Bryan, Texas.[2] Plaintiff is currently on supervised release, which is scheduled to expire on November 2, 1999.[3] Plaintiff has been previously incarcerated from 1972 to 1978 on a separate conviction.[4]

Plaintiff seeks to amend records that are maintained in the Inmate Central Record System.[5] This system contains information compiled during each period of plaintiff's incarceration.[6] Plaintiff alleges that her previous file, created during plaintiff's first incarceration from 1972 to 1978 ("First File"), contains both negative and favorable history. Specifically, the First File contains both information on plaintiff's escape history as well as records of plaintiff's successful participation in work/study release and furlough/community contact programs.[7] Plaintiff further alleges that the file created during plaintiff's second period of incarceration from 1992 to 1996 ("Second File") only contains references to her prior escape history, but not her successful participation in work/study and furlough/community contact programs.[8]

During plaintiff's second period of incarceration, plaintiff made several requests including requests for custody reductions, a transfer to a facility closer to her family, and furloughs. On January 3, 1993, plaintiff sent a letter to Mr. R. Kelly, a Case Manager at the prison, requesting custody reduction and camp placement at a facility closer to her family.[9] The request was subsequently denied. Plaintiff alleges that the denial was due to her Second File having an incomplete record of her prison history.[10] By letter

---

1. Other named defendants include the Federal Medical Center, the Mid–Atlantic Regional Office and the Federal Prison Camp. Complaint ("Compl.") ¶ 7.

2. Compl. at ¶¶ 4–5.

3. Compl. at ¶ 15.

4. Tamez Declaration ("Decl.") at 1.

5. Defendant's Motion for summary judgment ("Def's Mot.") at 8.

6. Tamez Decl. at 1.

7. Amended ("Amd.") Compl. at ¶¶ 18(b)—18(h).

8. Amd. Compl. at ¶ 18(i).

9. Plaintiff's Exhibit ("Pl.'s Ex.") A.

10. Pl.'s Ex. B.

dated February 5, 1993, plaintiff requested Mr. Kelly's assistance in incorporating a record of her successful participation in the work/study and furlough/community programs into her Second File.[11] Plaintiff further alleges that, from February 5, 1993 to October 20, 1994, she repeatedly sought access to her Second File to amend it under the Privacy Act, but was denied each time.[12]

On August 12, 1994, plaintiff was notified of the death of her father.[13] Plaintiff applied for an unescorted three-day furlough to be with her family in order to attend the funeral and assist with the funeral arrangements.[14] Plaintiff alleges that this request was also denied based on incomplete information in her Second File.[15] Following the denial, plaintiff applied for an escorted furlough to attend her father's funeral, but the request was also denied. Plaintiff alleges that defendant failed to process this second request for the escorted furlough in a timely manner, which amounted to a denial of her request.[16] On August 4, 1995, plaintiff filed this instant action for damages claiming that she was denied access to her First File and thus was precluded from amending her Second File, in violation of the Privacy Act.[17]

### III. STANDARD OF REVIEW

In considering the defendant BOP's motion for summary judgment, the court must examine all evidence in the light most favorable to the plaintiff. Summary judgment should be granted if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant has the initial burden to show that there is an absence of evidence to sup-

11. *Id.*

12. Compl. ¶ 22.

13. Compl. at ¶ 27.

14. Compl. at ¶¶ 27–28.

15. Compl. at ¶ 29.

16. Compl. at ¶¶ 37–38.

17. On August 6, 1993, plaintiff submitted a formal FOIA request to the Department of Justice ("DOJ") to locate her First File. On October 31,

port the non-moving party's case. *Id.* In order to defeat the motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The non-moving party must show there is a genuine issue for trial by way of affidavits or other documentary evidence, where a reasonable jury could find for the non-moving party. *Neal v. Kelly,* 963 F.2d 453, 456–57 (D.C.Cir.1992).

### IV. ANALYSIS

#### A. Plaintiff's Motion to Amend the Complaint

In response to defendant's motion for summary judgment, plaintiff filed a motion to amend the complaint. Although defendant does not oppose plaintiff's motion to amend, defendant contends that plaintiff's amended complaint still lacks sufficient factual and legal basis to survive defendant's motion for summary judgment.[18]

Rule 15(a) of the Federal Rules of Civil Procedure provides in pertinent part that "leave [to amend the complaint] shall be freely given when justice so requires." Fed. R.Civ.P. 15(a); *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). It is an abuse of discretion of the court to deny leave to amend unless there are sufficient reasons, such as "undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by [previous] amendments ... [or] futility of amendment."

1995, BOP notified plaintiff that it had located her First File, which consisted of 391 pages. The first hundred pages were released to plaintiff at no cost. However, plaintiff was required to pay for the reproduction costs for the remaining documents. It is not clear from the record whether plaintiff paid the reproduction costs in order to obtain the remaining 291 pages of her First File.

18. Defendant's Response to Plaintiff's Motion to Amend the Complaint at 1.

*Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996).

In the present action, the court finds it futile to grant plaintiff's motion to amend the complaint because plaintiff cannot meet its burden of showing that there is a genuine issue for trial. In considering the amended complaint in the light most favorable to the plaintiff, the court concludes that plaintiff is entitled to no relief because plaintiff fails to meet the statute of limitations. Moreover, even if plaintiff timely filed her complaint, plaintiff still fails to establish a claim under the Privacy Act.

**B. Plaintiff's Claim For Damages Based On The Privacy Act** [19]

**i. Statute of Limitation**

■ Plaintiff's complaint is barred by the two year statute of limitation under the Privacy Act. Plaintiff filed this action on August 4, 1995, seeking damages for alleged injuries which occurred from September 5, 1993 to October 20, 1994.[20] However, the record indicates that the alleged violation, which gave rise to this Privacy Act cause of action, arose as early as February 5, 1993.

Section 552a(g)(5) provides that a cause of action under the Privacy Act must be filed within two years of the alleged violation, or within two years after plaintiff's discovery of the alleged violation.[21] The United States Court of Appeals for the District of Columbia Circuit has interpreted this to mean that the statute of limitation runs when the plaintiff knows or should know of the alleged violation. *Tijerina v. Walters,* 821 F.2d 789 (D.C.Cir.1987) (holding that in a normal Privacy Act claim, the cause of action does not arise and the statute of limitation does not begin to run until the plaintiff knows or should know of the alleged violation). Furthermore, this court has found that "new causes of action do not arise each and every time there is subsequent adverse determination based on the alleged incorrect records." *Szymanski v. U.S. Parole Comm.,* 870 F.Supp. 377, 378 n. 4 (D.D.C.1994), (citing *Diliberti v. U.S.,* 817 F.2d 1259, 1264 (7th Cir.1987)). If the suit is not filed within two years, the court simply no longer has subject matter jurisdiction. *Id.* at 378.

In the present case, plaintiff knew of defendant's alleged violation of her rights under the Privacy Act for more than two years. The evidence in the record demonstrates that plaintiff was aware of the alleged omission in her Second File as early as February 5, 1993. In a letter to Mr. Kelly, dated February 5, 1993, plaintiff wrote that "the fact that I am precluded from [camp placement] due to my escape history, I am requesting your assistance with locating my [First File] which would document a more recent furlough history and be more favorable to me." [22] This letter demonstrates that plaintiff believed that her Second File was not complete and that she was actively seeking to amend it. Furthermore, plaintiff's complaint states that

---

**19.** In addition to claims under the Privacy Act, plaintiff also alleges that defendant violated her rights under the Freedom of Information Act ("FOIA"). However, plaintiff's FOIA claim is moot because plaintiff has access to her file. Specifically, at least 100 documents responsive to plaintiff's FOIA request have been released to plaintiff Pl.'s Ex. F–1. If the materials have been released, there is no further need for judicial function under FOIA. *Perry v. Block,* 684 F.2d 121, 125 (D.C.Cir.1982). As such, the court dismisses plaintiff's FOIA claim.

Plaintiff also brought claims of personal injuries and emotional distress under the Federal Tort Claims Act ("FTCA") against the defendant. Def's Statement of Material Facts at ¶ 5. However, in her affidavit filed with the motion to amend the complaint, plaintiff concedes that the jurisdiction for her tort claims lies with the United District Court for the Southern District of Texas, and not with this court. Pl.'s Aff at 2.

Accordingly, the court dismisses plaintiff's claims of personal injuries and emotional distress against the defendant.

**20.** Compl. at ¶ 26.

**21.** Section 552a(g)(5) provides in pertinent part that a cause of action must be filed "within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation." 5 U.S.C. § 552a(g)(5) (1996).

**22.** Pl.'s Ex. B.

**22**

she continuously sought to access and amend her Second File from February 5, 1993 to October 20, 1994, without success.[23]

Based on this evidence, the court concludes that plaintiff knew or should have known of the BOP's alleged violation of plaintiff's rights under the Privacy Act as early as February 5, 1993. Plaintiff, however, did not file the current action until August 4, 1995, two years and six months after she knew or should have known of the alleged violation. Thus, plaintiff's suit falls outside the statute of limitation of the Privacy Act. Accordingly, the court concludes that plaintiff's Privacy Act claims are barred by the two year statute of limitation.

### ii. Failure to State a Claim

■ Even if plaintiff's complaint was timely filed, plaintiff's complaint fails to satisfy the four-prong test in an action for damages under the Privacy Act. To prevail in a Privacy Act cause of action, plaintiff must establish four elements: (1) there was adverse determination; (2) the agency failed to maintain plaintiff's records with the degree of accuracy necessary to assure fairness in the determination; (3) the agency's failure was the proximate cause of the adverse determination; and (4) the agency acted intentionally or willfully in its failure. *See* 5 U.S.C. § 552a(d), (e)(5), (g)(1)(c), (g)(1)(d) and (g)(4) (1996); *Dickson v. Office of Personnel Management,* 828 F.2d 32 (D.C.Cir.1987), *Deters v. U.S. Parole Comm.,* 85 F.3d 655 (D.C.Cir. 1996).

■ In the instant case, plaintiff fails to demonstrate that defendant intentionally and willfully neglected to properly maintain her record. In order for civil remedies to be awarded against an agency, the agency must have acted in a manner that was "intentional or willful." § 552a(g)(4), *Sellers v. BOP,* 959 F.2d 307, 312 (D.C.Cir.1992), *Doe v. U.S.,* 821 F.2d 694, 695 n. 3 (D.C.Cir.1987), *Deters,* 85 F.3d at 657. The intentional or willful conduct under § 552a(g)(4) "refers only to the intentional or willful failure of the agency to

abide by the Act, and not to all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures." *Albright v. U.S.,* 732 F.2d 181, 188 (D.C.Cir. 1984). To establish willful intent, a plaintiff must demonstrate something greater than gross negligence. *Tijerina,* 821 F.2d at 798. This can be shown when an agency acts "without grounds for believing it to be lawful or by flagrantly disregarding others' rights under the Act." *Albright,* 732 F.2d at 188–89. "The violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Deters,* 85 F.3d at 659, (citing *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir. 1987)).

Here, plaintiff fails to demonstrate that defendant's alleged failure to incorporate plaintiff's First File with her Second File constitutes a flagrant disregard of plaintiff's rights under the Privacy Act. In support of her allegation that defendant intentionally or willfully violated the Privacy Act, plaintiff submitted her own affidavit and that of Teresa Kay, plaintiff's roommate at the prison.

Plaintiff's affidavit states that defendant's willful or intentional conduct can be established by showing a pattern of continuous lack of response to plaintiff's requests to update her file.[24] However, defendant's failure to supplement plaintiff's Second File was not a flagrant disregard of plaintiff's right under the Privacy Act because the BOP Program statement specifically states that prior files of inmates "shall not be combined with new sentence file."[25] In fact, defendant simply followed the BOP guidelines by not amending plaintiff's Second File to include information from plaintiff's First File. Accordingly, defendant's alleged conduct described in plaintiff's affidavit does not amount to the level of egregious and unlawful behavior and thus does not set forth a claim under the Privacy Act for which the court can grant relief.

---

23. Compl. ¶ 22.

24. Pl.'s Aff. at 2.

25. Bureau of Prisons, United States Department of Justice, Program Statement No. 5800.09, Inmate Central File, Privacy Folder, and Parole Mini–Files (1993) at ¶ 18a.

■ Teresa Kay's affidavit discusses a phone conversation she overheard Ms. Emmons, a counselor at the prison, had regarding an inmate's furlough request.[26] According to Ms. Kay's affidavit, Ms. Emmons allegedly stated that "the furlough request wasn't going to be approved, and that [I] didn't want to be the one to get into trouble."[27] Furthermore, the affidavit states that Ms. Emmons allegedly placed the furlough request in another employee's box. Ms. Kay's affidavit does not identify the name of the inmate or the specificity of that unnamed inmate's request. In any event, allocating one's work to another does not constitute patently egregious and unlawful conduct as contemplated in the Privacy Act.

### C. Plaintiff's Action Against Unnamed Defendants

■ In addition to the BOP, plaintiff's complaint alleges that several federal agencies and unnamed individuals violated her rights under the Privacy Act for not properly maintaining her federal prison record.[28] Defendant, however, argues that it is the only proper defendant in this case.

According to the Federal Bureau of Prison Program Statement 5800.09, the BOP is the only agency responsible for creating and maintaining the Inmate Central File for all inmates confined in federal prison facilities.[29] Since plaintiff's complaint alleges improper maintenance of her federal prison record, the court concludes that the BOP is the only proper defendant in this action, and dismisses all other federal agencies listed in plaintiff's complaint.

■ With regard to plaintiff's allegation that several unnamed individuals improperly denied her access to her prison record, the court notes that the Privacy Act does not allow a person to seek civil remedies against individuals. Pursuant to section 552a(g)(1) of Title 5 of the United States Code, "the indi-

vidual may bring a civil action against the agency." 5 U.S.C. § 552a(g)(1). The term "agency" is defined to include "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government … or any independent regulatory agency." 5 U.S.C. § 552(f)(1). The term does not include individual officers or employees of an agency. *See Williams v. McCausland*, 791 F.Supp. 992, 1000 (S.D.N.Y.1992). Moreover, there is no provision in the federal statutes or federal rules of civil procedure for the use of fictitious defendants. *Saffron v. Wilson*, 70 F.R.D. 51 (D.D.C.1975), *McAllister v. Henderson*, 698 F.Supp. 865, 868 (N.D.Ala.1988). Accordingly, the court dismisses plaintiff's claims against these unidentified individuals.

## V. CONCLUSION

For the reasons stated above, the court denies plaintiff's motion to amend complaint as futile, and grants defendant's motion for summary judgment.

**SO ORDERED.**

---

26. Pl.'s Ex. R.

27. *Id.* at 1.

28. Compl. ¶¶ 7–9.

29. The BOP maintains complete information on all offenders confined in its facility. *See* Bureau Of Prisons, United States Department Of Justice,

Program Statement No. 5800.09, Inmate Central File, Privacy Folder, and Parole Mini–Files (1993) at ¶ 1. The Unit Staff of the BOP is responsible for creating and maintaining the Inmate Central Files. *Id.* at ¶¶ 6(a), 7(b) and (c). The BOP staff uses the Inmate Central File to maintain pertinent information regarding the inmate. *Id.* at ¶ 1.