**Mark GOLDSMITH, M.D., Plaintiff,**

**v.**

**HARDING HOSPITAL, INC., Defendant.**

**No. C2–91–058.**

United States District Court, S.D. Ohio, E.D.

April 29, 1991.

John W. Ferron, Melissa L. Zox, Columbus, Ohio, for plaintiff.

Nanci L. Danison, James P. Friedt, Bradley K. Sinnott, Columbus, Ohio, for defendant.

### OPINION AND ORDER

GRAHAM, District Judge.

Plaintiff Mark Goldsmith, M.D., filed a complaint on January 23, 1991 seeking declaratory and injunctive relief against defendant Harding Hospital. Plaintiff asserted in his complaint that he was denied due process of law by reason of defendant's suspension of his participation in a psychiatric residency program. Plaintiff alleged that defendant's conduct violated provisions of the Health Care Quality Improvement Act of 1986, ("HCQIA") 42 U.S.C. § 11111, *et seq.* On February 15, 1991, plaintiff filed a first amended com-

plaint asserting a claim of handicap discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 790, *et seq.*

■ This matter is before the court for a decision on defendant's motion under Fed. R.Civ.P. 12(b)(1) and (6) to dismiss plaintiff's claim under HCQIA for lack of subject matter jurisdiction. Defendant asserts that HCQIA does not provide a private cause of action to physicians who are terminated or suspended by institutions or peer review groups due to inadequate performance.

The provisions of HCQIA relate to professional review actions undertaken by health care entities in regard to the competence or professional conduct of physicians. Under 42 U.S.C. § 11111, a professional review body and its members are deemed to be immune from liability under state and, with some exceptions, federal law for damages stemming from the actions taken by that body in regard to a physician if the review body has complied with the standards set forth in 42 U.S.C. § 11112(a) in respect to those actions. Section 11112(a) requires that the physician be accorded adequate notice of the proposed action and a hearing which satisfies certain specified criteria. That section also imposes upon the reviewing body a duty to conduct a reasonable investigation of the facts and circumstances surrounding the physician's performance. Under 42 U.S.C. §§ 11132 to 11134, health care entities and medical boards are required to report certain adverse actions taken by those entities in regard to a physician to the Secretary of Health and Human Services. A health care entity which does not comply with the requirements of § 11112 or which does not comply with the reporting requirements of § 11133(a)(1) is not entitled to the immunity provided in § 11111(a)(1). *See* 42 U.S.C. § 11111(a)(1) and (b); 42 U.S.C. § 11133(c)(1).

■ There is no express provision in HCQIA creating a cause of action by a physician against a health care entity which fails to comply with the notice and hearing requirements of § 11112. In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth factors which are relevant in determining whether a private remedy is implicit in a statute which does not expressly provide for one. These factors include: 1) whether the plaintiff is a member of the class for whose special benefit the statute was enacted; 2) whether there is any indication of legislative intent, explicit or implicit, to create or deny a remedy; 3) whether it would be consistent with the underlying purposes of the legislative scheme to imply a remedy; and 4) whether the cause of action is one traditionally relegated to state law in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law. *Id.* at 78, 95 S.Ct. at 2087.

■ In this case, the chief beneficiaries of HCQIA are the professional review bodies which are accorded immunity from liability for damages, and patients who benefit from the reporting requirements established by HCQIA, as well as from the incentive afforded by the immunity provisions to health care entities and medical boards to take action against incompetent physicians. Section 11112 awards no remedy to a physician for the failure of a professional review body to comply with its requirements. Rather, lack of compliance simply deprives the review body of the immunity defense. If the provisions of § 11112 are complied with, the physician is incidentally afforded the benefits of due process, but is ultimately affected adversely by the immunity bar to any suit for damages. Thus, the physician under review is not within a class of persons for whose special benefit the statute was enacted.

The legislative history of HCQIA also provides no indication that Congress intended to create a cause of action for the benefit of physicians seeking to enforce compliance with the Act. The purpose behind HCQIA is set out in House Report 99–903 of the Energy and Commerce Committee, *reprinted in* 1986 U.S.Code Cong. & Ad.News pp. 6287, 6384:

The purpose of this legislation is to improve the quality of medical care by encouraging physicians to identify and discipline other physicians who are incompetent or who engage in unprofessional behavior.

Under this bill, hospitals and physicians that conduct peer review will be protected from damages in suits by physicians who lose their hospital privileges, provided the peer review actions meet the due process and other standards established in the bill. In addition, hospitals and physicians that discipline doctors will be required to report these disciplinary actions to the state medical boards. In turn, the state medical boards will be required to forward this information to the secretary of the Department of Health and Human Services ("the Secretary") or the Secretary's designee. The bill further requires hospitals to seek this information from the Secretary, or the Secretary's designee, before hiring doctors or other licensed health care practitioners.

The Committee's report goes on to comment that the "bill's focus is on those instances in which physicians injure patients through incompetent or unprofessional service, are identified as incompetent or unprofessional by their medical colleagues, but are dealt with in a way that allows them to continue to injure patients." 1986 U.S.Code Cong. & Ad.News p. 6384. The Committee notes the need for a central location to receive information concerning disciplinary actions, as well as the need to provide some legal immunity to doctors and hospitals which engage in peer review activities in order to encourage compliance with the reporting system by lessening the possibility of litigation. *Id.* at 6385. The above concerns are also reflected in the congressional findings contained in 42 U.S.C. § 11101. The Committee makes no mention of the need to afford physicians due process at review proceedings as being a purpose behind the proposed legislation.

In the discussion concerning the provisions of § 11112, the Committee recognized its intent that physicians be given a fair hearing, but states that "the failure to meet the standards of [§ 11112(a)] creates no presumption with respect to the liability or lack of liability of a health care entity" and that the "only conclusion that follows from a failure to meet those standards is that the entity is not entitled to the immunity conferred under this legislation." 1986 U.S.Code Cong. & Ad.News, pp. 6393–6394. The Committee further states, *Id.* at 6395:

> [T]he due process requirements of [§ 11112] apply only where immunity is claimed for a professional review action; where no immunity is sought, other applicable law determines the extent to which due process is required with regard to an action by a health care entity. Subsection (b) reflects the intention of the Committee not to affect in any way the rights of individuals to apply for clinical privileges with health care entities, and the rights of health care entities to accept or deny those applications. This legislation only defines the basis upon which immunity from damages will be granted with regard to professional review actions; ...

Thus, there is nothing in the legislative history to indicate that Congress intended to provide a cause of action for physicians under § 11112, and in fact, the legislative history indicates the contrary intent to provide solely for immunity on the part of professional review bodies.

It would also not be consistent with the underlying purposes of the legislative scheme to imply a remedy for physicians under § 11112. The legislative history reveals that the purpose of §§ 11111 and 11112 is to foster compliance with the reporting requirements by alleviating the threat of litigation through a grant of immunity. It would be contrary to this purpose to construe HCQIA as creating yet another cause of action which could be brought by physicians against professional review bodies, thereby increasing rather than decreasing the chilling effect of litigation. Recognition of a cause of action wherein a physician seeks to enjoin the reporting of adverse action required by the statute, as plaintiff requests here, would

also work against the congressional intent to mandate and encourage reporting.

Finally, defendant has submitted case authority indicating that Ohio law provides a remedy to physicians for judicial review of disciplinary actions or a denial or termination of privileges. *See Nemazee v. Mt. Sinai Medical Center,* 56 Ohio St.3d 109, 564 N.E.2d 477 (1990); *Bouquett v. St. Elizabeth Corp.,* 43 Ohio St.3d 50, 538 N.E.2d 113 (1989); *Khan v. Suburban Community Hospital,* 45 Ohio St.2d 39, 340 N.E.2d 398 (1976).

A weighing of the factors set forth in *Cort v. Ash* leads to the conclusion that Congress did not intend to create a cause of action for the benefit of physicians to enforce the provisions of § 11112 or to sue under other provisions of HCQIA.

The issue presented here was considered by the court in *Caine v. Hardy,* 715 F.Supp. 166 (S.D.Miss.1989), *rev'd on other grounds,* 905 F.2d 858 (5th Cir.1990). The court in *Caine* granted the defendant's motion to dismiss the claim of the plaintiff physician alleging that his suspension was contrary to the provisions of HCQIA, stating, *Id.* at 170:

> The Health Care Quality Improvement Act was not intended to replace existing procedural safeguards already in place at public hospitals nor provide a disciplined physician with a private cause of action. Rather, the Act is intended to establish certain criteria by which to determine whether procedural safeguards adopted for peer review of health professionals are sufficient to cloak the individuals acting pursuant to those procedures with the immunity provided by the Act.

*See also Boyer v. Lehigh Valley Hospital Center, Inc.,* 1990 WL 94038, 1990 U.S. Dist.LEXIS 8221 (E.D.Pa.1990) (the HCQIA peer review protection provisions merely conditionally immunize peer review groups and do not impose mandatory regulations over the conduct of private entities for purpose of the state action requirement of 42 U.S.C. § 1983).

The opinion in *Austin v. McNamara,* 731 F.Supp. 934 (C.D.Cal.1990), cited by plaintiff, does not support his position. The plaintiff in *Austin* did not seek to assert a claim under HCQIA, and HCQIA was discussed only insofar as its immunity provisions were invoked by the defendants.

In conclusion, this court finds that HCQIA creates no cause of action for the benefit of physicians to enforce its provisions. Defendant's motion to dismiss for lack of subject matter jurisdiction is granted, and plaintiff's claim under HCQIA (First Cause of Action) is hereby dismissed.