Arthur J. MISISCHIA, D.M.D.,
Appellant/Cross–
Respondent,

v.

ST. JOHN'S MERCY MEDICAL CENTER, John J. Delfino, D.M.D., and John J. Delfino, D.M.D., P.C., Respondents/Cross–Appellants.

No. ED 74687–01.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 26, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 2000.

Application for Transfer Denied
Dec. 5, 2000.

---

3. Mother's Motion to Dismiss Father's Brief is denied.

P. Terence Crebs, Matthew P. Brookman, St. Louis, for Plaintiff/Appellant/Cross-Respondent, Arthur J. Misischia, D.M.D.

David M. Harris, John E. Petite, Dawn M. Johnson, St. Louis, for Defendant/Respondent/Cross-Appellant, St. John's Mercy Medical Center.

Allen S. Boston, Ronald A. Norwood, Richard A. Wunderlich, St. Louis, for Respondents/Cross-Appellants, John J. Delfino, DMD and John J. Delfino, DMD.

GARY M. GAERTNER, Presiding Judge.

Appellant, Arthur J. Misischia, ("plaintiff"), appeals from the judgment of the Circuit Court of the City of St. Louis, in favor of respondents[1], St. John's Mercy Medical Center, ("St.John's"), John J. Delfino, D.M.D., ("Delfino"), and John J. Delfino, D.M.D., P.C., a/k/a St. Louis Oral & Maxillofacial Surgeons, Ltd., ("O & MS"), on plaintiff's common-law claims for tor-

---

1. Jointly, respondents will be referred to as "defendants."

tious interference with business relations, malicious prosecution, abuse of process, retaliation, conspiracy, and slander. St. John's cross-appeals on a denial of attorney's fees. Delfino and O & MS' cross-appeal on a judgment in favor of plaintiff on his claim for fraudulent misrepresentation against Delfino. We affirm.

Plaintiff brought this suit against St. John's, Delfino and O & MS, for damages in connection with the suspension of his medical and dental staff privileges at St. John's and the termination of his contracts with St. John's and O & MS. After several amendments to plaintiff's original petition and a series of motions to dismiss and for summary judgment, the remaining issues for trial were plaintiff's claims for slander against Dr. Delfino and O & MS (Count IV), tortious interference against Dr. Delfino (Counts V and VIII), and fraud against Dr. Delfino and O & MS (Count VII).

## I. FACTS

In 1985, plaintiff became an associate active member of St. John's Medical and Dental Staff in oral and maxillofacial surgery. From November 1987 until July 25, 1994, plaintiff was an active member of St. John's Medical and Dental staff, with his staff privileges renewed bi-annually during this period. Further, from July 1, 1986 through July 25, 1994, plaintiff was employed by St. John's under written contract as associate director of the Department of Oral and Maxillofacial Surgery Residency Program at St. John's.

On July 1, 1987, in addition to above, plaintiff and O & MS entered into a written contract whereby plaintiff agreed to conduct his private practice at the offices of O & MS, for a consideration of fifty percent of plaintiff's receipts up to $300,-000, and a declining percentage of his receipts in excess thereof. Delfino was and is the sole director, sole shareholder and President of O & MS.

From February 1993 through the time of plaintiff's summary suspension on October 27, 1993, concerns regarding the training being provided in the Oral and Maxillofacial Surgery Residency Program at St. John's and concerns about unnecessary and excessive surgery performed by Delfino and poor results obtained by Delfino were discussed during regularly scheduled meetings of St. John's Oral & Maxillofacial Surgery Department.

In late June 1993, plaintiff questioned the qualifications of an oral and maxillofacial surgeon who was being recruited to do cleft palate repairs.

On August 13, 1993, Dr. Delfino presented plaintiff with a proposed written employment agreement that was unacceptable to plaintiff.

In late August, 1993, plaintiff met with John Farrell, ("Farrell"), St. John's C.E.O. at the time, regarding the proposed written agreement. At that time, Farrell questioned why 50% of the revenue generated by plaintiff went to O & MS for overhead and office staff, because St. John's provided that to Dr. Delfino and his corporation without charge.

On September 27, 1993, an incident occurred in which, according to an eye-witness report, plaintiff punched a patient in the face when the patient became combative while emerging from anesthesia. The incident was witnessed by Sandra End, ("End"), a surgical assistant, who then notified her supervisor, Judy Toscano, ("Toscano"), a few days later. Toscano, after checking with St. John's Risk Management Department, instructed End to draft a narrative describing the incident. End drafted a narrative and then gave it to Toscano who prepared an incident report and filed it with the Risk Management Office. The report is dated October 14, 1993. End also advised Toscano of a separate earlier episode involving plaintiff, wherein he forcibly shook a patient while calling her "a f___ing adult baby" during a procedure, and then administered a medically unnecessary bolus of versed which typically renders a patient amnesic to recent events. Toscano instructed End to

draft a second narrative. End complied and this narrative was attached to a second incident report, dated October 19, 1993.

On October 5, 1993, Farrell spoke with Delfino in an effort to learn the nature of the contract dispute between plaintiff and Delfino. Delfino told Farrell he was dissatisfied with plaintiff's contributions to the private practice and recommended St. John's either not renew or terminate plaintiff's separate contract with St. John's because plaintiff was not fulfilling his teaching obligations as Associate Director of the Oral and Maxillofacial Department of Surgery, ("OMFDS"), Residency Program under the contract. Under the contract, plaintiff could be terminated from the above position for any reason, upon ninety (90) days' written notice. The contract further provided that if it was terminated, plaintiff would automatically lose his medical staff privileges. During this meeting, Delfino allegedly mentioned to Farrell that "[plaintiff] had to take a month off last year ... because of a problem...."

On October 6, 1993, Toscano informed plaintiff she was about to file the incident reports and alert St. John's about his punching of a patient. Plaintiff did not deny the punching, rather he began surreptitiously compiling confidential medical records of Delfino's patients. Plaintiff eventually took these records to Farrell and accused Delfino of providing improper dental care and treatment and other professional improprieties.

Delfino and John P. Marbarger, M.D., ("Marbarger"), Chief of St. John's Department of Surgery, met regarding plaintiff. Two other incidents involving plaintiff came to light, specifically plaintiff had become enraged when one of his patients was left for half an hour in a waiting room, such that plaintiff pulled the windows out of a waiting room wall. In another incident, plaintiff became enraged at the manner in which a surgical assistant was assisting him. Plaintiff allegedly began screaming and ordered the surgical assis-

tant from the room during a procedure, telling her to leave the building and never come back and allegedly threw surgical instruments on the floor.

On October 27, 1993, Marbarger and Delfino met with Farrell to inform him of their recommendation that St. John's summarily suspend plaintiff's staff privileges while the medical staff investigated the allegations contained in the incident reports. Immediately thereafter, Farrell met with plaintiff to inform him of the incident reports and the resulting recommendation by Delfino and Marbarger, but also to learn plaintiff's version of the events.

On October 28, 1993, Marbarger confirmed his recommendation in writing as required by St. John's Medical Staff By-laws. Plaintiff was then informed in writing of his option to appeal the suspension. Plaintiff did appeal the decision and requested an investigative hearing.

As a result of plaintiff's appeal, St. John's, through their Medical Executive Committee, ("MEC"), appointed a fact-finding subcommittee, the Ad Hoc Investigative Committee, ("AHIC"). The AHIC set a hearing date, informed plaintiff of such, and notified plaintiff of the incidents that formed the basis for the summary suspension. St. John's provided plaintiff with the patient charts and other documentation regarding the two patient incidents the AHIC would be reviewing.

On November 23, 1993, the AHIC held its hearing. Plaintiff presented witnesses who testified on his behalf, confronted and cross-examined witnesses, presented patient records to support his position and spoke on his own behalf. Some of plaintiff's witnesses testified to disparaging statements made by Delfino about plaintiff. End, Toscano and other St. John's personnel also appeared and testified about the incidents that formed the basis of the summary suspension.

The AHIC found that "[w]e do see one serious incident where in a stressful situa-

tion without adequate assistance, [plaintiff] reacted with excessive physical force in attempting to restrain a patient who was combative while under anesthesia." Based on this finding, it was recommended to St. John's Board of Trustees that plaintiff's suspension remain in force until he received a psychiatric determination of fitness.

On December 21, 1993, plaintiff appealed the decision to the Hospital Board. On January 28, 1994, the Hospital Board heard plaintiff's appeal. On February 2, 1994, the Hospital Board unanimously affirmed and adopted the above recommendation.

On March 21, 1994, plaintiff saw a psychiatrist jointly selected by him and St. John's. The psychiatrist found plaintiff was not suffering from any type of psychiatric disorder, therefore it was recommended the summary suspension be terminated. St. John's, in turn, revoked the summary suspension.

On April 25, 1994, St. John's elected to terminate its contract with plaintiff effective July 25, 1994. Pursuant to the terms of the contract, plaintiff's medical staff privileges were also terminated. Nonetheless, St. John's informed plaintiff he could reapply for membership on the medical staff.

## II. PROCEDURAL HISTORY

On October 5, 1994, plaintiff filed this action against St. John's, Delfino and O & MS. In his original petition, plaintiff alleged St. John's and Delfino had violated plaintiff's constitutional right to due process and his purported procedural rights under section 11111(a)(1) of the Health Care Quality Improvement Act of 1986, ("HCQIA"), 42 U.S.C. section 11101 et seq., by initiating and conducting a sham peer review proceeding.

On November 3, 1994, the case was removed to the United States District Court for the Eastern District of Missouri. While this case was pending in federal court, St. John's filed an answer to the original petition, and all defendants filed motions to dismiss. On February 29, 1996, the case was remanded to the Circuit Court of the City of St. Louis, sua sponte.

In plaintiff's second amended petition, he alleged defendants, through Dr. Delfino, made numerous knowingly untrue statements, including: plaintiff was in jail; plaintiff was facing felony charges; plaintiff had emotional and psychiatric problems; and, plaintiff was "certifiably crazy." Dr. Delfino allegedly made these statements to numerous doctors, executives of St. John's, and at least one nurse. The counts in plaintiff's amended petition were as follows: Count I was against all defendants and was a claim for conspiracy to maliciously prosecute; count II was against all defendants and was a claim for conspiracy to abuse process; count III was against all defendants and was a claim for retaliatory discharge; count IV was against all defendants and was a claim for slander; count V was against all defendants and was a claim for tortious interference; count VI was against all defendants and was a claim for conspiracy based on the actions complained of in counts I–V, and count VII was against Delfino and O & MS and was a claim for fraud.

On October 28, 1996, defendants' motions to dismiss were granted as to counts I, II, III and VI; granted as to St. John's and O & MS as to count V; and denied as to count IV; denied as to the claim against Delfino on count V; and denied as to count VII.

On March 10, 1997, plaintiff filed a third amended petition to include a tortious interference of a contract claim against Defino and O & MS alone.

On July 10, 1997, defendants filed a joint motion for summary judgment, arguing section 11111(a)(1) of the Health Care Quality Improvement Act of 1986, ("HCQIA"), 42 U.S.C. section 11101 et seq., entitled St. John's and Dr. Delfino to immunity. On August 11, 1997, plaintiff filed a response and memorandum in oppo-

sition to defendants' summary judgment motion, which included the argument HCQIA was unconstitutional.

On October 9, 1997, St. John's filed a second motion for summary judgment addressing plaintiff's slander claim on its merits, stating in part St. John's was entitled to summary judgment because some of the alleged slanderous statements were not defamatory, plaintiff could not show he had sustained any damage and because some of the statements were privileged. On October 28, 1997, the trial court entered a judgment sustaining St. John's motion for summary judgment as to slander, ruling "plaintiff has failed to rebut the presumption that St. John's is not liable for damages to plaintiff for the results of its peer review action pursuant to HCQIA, section 11111." In a footnote, the court noted "although it entertains grave doubts that the HCQIA is constitutional, the Court has not reached that issue, because the Court considers that St. John's is entitled to summary judgment for another reason: on this record, it is patent that St. John's alleged slanderous statements are privileged." However, this footnote conflicts with a subsequent ruling, by the same court, on November 24, 1997, wherein the court noted " . . . St. John's has been dismissed from the case because the Court found it immune from liability under [HCQIA] . . . ."

On October 28, 1997, defendants Delfino and O & MS filed a motion to join defendant St. John's October 9, 1997 motion for summary judgment. On November 17, 1997, plaintiff filed a response to the aforementioned motion submitting in part, that the motion for summary judgment was moot as to St. John's and should be denied for that reason. On November 24, 1997, the trial court entered its judgment agreeing with plaintiff that the motion was moot as to St. John's (see reference to November 24 judgment in prior paragraph). Further, in its judgment, the trial court denied the bulk of defendant Delfino's motion for summary judgment, finding issues of fact in dispute, for example, as to whether defendants made the statements out of malice, thereby precluding the intra-corporate immunity. The trial court did grant the motion to defendant as to a letter plaintiff received recounting the allegations contained in the incident reports upon which plaintiff's summary suspension was partially based.

On February 5, 1998, the trial commenced. As the trial court had granted St. John's motion for summary judgment based on HCQIA, the trial proceeded against Dr. Delfino and O & MS alone, on plaintiff's remaining claims for slander (count IV), tortious interference (counts V and VIII) and fraud (count VII). On February 24, 1998, the jury returned a verdict in favor of Delfino and O & MS on counts IV, V and VIII, and in favor of plaintiff on his fraud claims contained in Count VII, awarding plaintiff $265,000.

Plaintiff appealed. He raises eleven points on appeal. Further facts pertinent to address these issues will be added as necessary.

### III. ARGUMENT

In his first point on appeal, plaintiff alleges the trial court erred in granting summary judgment for St. John's, finding St. John's entitled to immunity under the Health Care Quality Improvement Act of 1986, ("HCQIA"), 42 U.S.C. section 11101, et seq. Specifically, plaintiff asserts HCQIA as applied is unconstitutional and that the record demonstrates there were genuine issues of material facts concerning St. John's entitlement to immunity. We disagree.

The question of the constitutionality of HCQIA is an issue within the purview of the Missouri Supreme Court's exclusive jurisdiction. Therefore, based on Mo. Const. Article V, section 11, this case was transferred to the Missouri Supreme Court. The Supreme Court found the issue was not adequately covered in the briefs and therefore, the point was not preserved. We are bound by their deci-

858

sion and for that reason, will not address the issue of the constitutionality of HCQIA. We will, however, address plaintiff's latter point concerning whether genuine issues of material facts exist.

"The provisions of HCQIA relate to professional review actions undertaken by health care entities in regard to the competence or professional conduct of physicians." *Goldsmith v. Harding Hosp., Inc.,* 762 F.Supp. 187, 188 (S.D.Ohio 1991). Under section 11111, a professional review body and its members are deemed to be immune from liability under state law for damages stemming from the actions taken by that body if it has complied with the standards set forth in section 11112(a). *Id.*

The purpose of [HCQIA] is to improve the quality of medical care by encouraging physicians to identify and discipline other physicians who are incompetent or who engage in unprofessional behavior.

Under [HCQIA], hospitals and physicians that conduct peer review will be protected from damages in suits by physicians who lose their hospital privileges, provided the peer review actions meet the due process and other standards established in [HCQIA].

House Report 99–903 of the Energy and Commerce Committee, *reprinted* in 1986 U.S.Code Cong. & Ad.News, pp. 6287, 6384. See also, *Goldsmith,* 762 F.Supp. at 188–89.

Plaintiff alleges the four elements of 42 U.S.C. section 11112(a) have not been satisfied. Specifically, he alleges 1) there was no reasonable belief that the action was in the furtherance of quality health care, see section 11112(a)(1); 2) there was no reasonable effort to obtain the facts of the matter, see section 11112(a)(2); 3) there was no adequate notice and hearing procedures, see section 11112(a)(3); and 4) there was no reasonable belief the action was warranted by the facts known, see section 11112(a)(4).

"HCQIA immunity is a question of law for the court to decide and may be resolved whenever the record in a particular case becomes sufficiently developed." *Bryan v. James E. Holmes Reg. Med. Ctr.,* 33 F.3d 1318, 1332 (11th Cir.1994). Further, "the rebuttable presumption of HCQIA section 11112(a) creates an unusual summary judgment standard that can best be expressed as follows: 'Might a reasonable jury, viewing the facts in the best light for [the plaintiff], conclude that he has shown, by a preponderance of the evidence, that the defendants' actions are outside the scope of sec. 11112(a)?' " *Id.* at 1333. This has been interpreted to mean the plaintiff bears the burden of proving the peer review process was not reasonable. *Id.*

Under the first element of HCQIA, i.e., that the action by the hospital was taken "in the reasonable belief that the action was in the furtherance of quality health care," the element is met if "the reviewers, with the information available to them at the time of the professional review action, would reasonably have concluded that their action would restrict incompetent behavior or would protect patients." *Bryan,* 33 F.3d at 1334–35. Further, a plaintiff's "assertions of hostility do not support his position [that the hospital is not entitled to HCQIA's protections] because they are irrelevant to the reasonableness standards of sec. 11112(a). The test is an objective one, so bad faith is immaterial." *Id.* at 1335.

In the case at bar, St. John's instituted the summary suspension after receiving incident reports indicating plaintiff had struck one patient under anesthesia and had shaken another. Plaintiff does not deny that these incidents occurred, but rather denies the surgical assistant's interpretation of them. Further, the thrust of plaintiff's argument centers on the idea that Dr. Delfino's subjective motivation was to get rid of plaintiff, which is irrelevant in our review. Therefore, based on this, it is clear that the decision to institute

the summary suspension of plaintiff was taken under the reasonable belief the action would restrict incompetent behavior and protect patients.

Plaintiff also alleges there is a genuine issue of material fact regarding whether there was a reasonable effort to obtain the facts of this matter. Specifically, plaintiff contends he should have been permitted to adduce evidence regarding the wrongful practices of Defino and Delfino's motives in bringing charges against plaintiff. We disagree.

HCQIA expressly states "nothing in [section 11112] shall be construed as ... precluding an immediate suspension or restriction of clinical privileges, subject to subsequent notice and hearing or other adequate procedures, where the failure to take such action may result in an imminent danger to the health of any individual." 42 U.S.C section 11112(c).

In the case at bar, incident reports were submitted concerning allegations of two separate events involving plaintiff, in physical altercations with patients, while he was treating them. The record supports that the failure by St. John's to immediately suspend plaintiff could have jeopardized the health and welfare of future patients. St. John's consulted their Risk Management Department, had incident reports procured, reviewed the incident reports, spoke with plaintiff's supervisor, interviewed the staff, referred the matter to the Medical Executive Committee, which convened a fact-finding subcommittee, eventually heard testimony and reviewed the pertinent medical records. Further, HCQIA case law indicates bad faith on the part of the reviewers is immaterial, therefore making plaintiff's statements about Delfino irrelevant. See Bryan, 33 F.3d at 1335. Therefore, the record demonstrates a reasonable effort by St. John's to obtain the facts of this matter.

Plaintiff also alleges St. John's did not fulfill the requirements of 42 U.S.C. section 11112(a)(3) by not providing adequate notice and hearing procedures. We dis-

agree. Specifically, plaintiff contends he was not allowed to have his attorney present, was not informed of the witnesses who would be called to testify against him, was not provided with copies of the written statements of the dental assistant that were the basis of the charges against him, was not permitted to adduce evidence concerning his allegations against Delfino, and was not offered an opportunity to submit a written statement at the close of the hearing. Further, members of the Ad Hoc Committee conducted ex parte investigations and interviews with witnesses prior to the November 23, 1993 hearing.

42 U.S.C. Section 11112(b) states:

(b) Adequate notice and hearing. A health care entity is deemed to have met the adequate notice and hearing requirement of subsection (a)(3) with respect to a physician if the following conditions are met (or waived voluntarily by the physician):

(1) Notice of proposed action. The physician has been given notice stating—

(A) (i) that a professional review action has been proposed to be taken against the physician,

(ii) reasons for the proposed action,

(B) (i) that the physician has the right to request a hearing on the proposed action,

(ii) any time limit (of not less than 30 days) within which to request such hearing, and

(C) a summary of the rights in the hearing under paragraph (3).

(2) Notice of hearing. If a hearing is requested on a timely basis under paragraph (1)(B), the physician involved must be given notice stating—

(A) the place, time, and date of the notice, and

(B) a list of the witnesses (if any) expected to testify at the hear-

ing on behalf of the professional review body.

(3) conduct of hearing and notice. If a hearing is requested on a timely basis under paragraph (1)(b)—

(A) subject to subparagraph (B), the hearing shall be held (as determined by the health care entity)—

(i) before an arbitrator mutually acceptable to the physician and the health care entity,

(ii) before a hearing officer who is appointed by the entity and who is not in direct economic competition with the physician involved, or

(iii) before a panel of individuals who are appointed by the entity and are not in direct economic competition with the physician involved;

(B) the right to the hearing may be forfeited if the physician fails, without good cause, to appear;

(C) in the hearing the physician involved has the right—

(i) to representation by an attorney or other person of the physician's choice,

(ii) to have a record made of the proceedings, copies of which may be obtained by the physician upon payment of any reasonable charges associated with the preparation thereof,

(iii) to call, examine, and cross-examine witnesses,

(iv) to present evidence determined to be relevant by the hearing officer, regardless of its admissibility in a court of law, and

(v) to submit a written statement at the close of the hearing; and

(D) upon completion of the hearing, the physician involved has the right—

(i) to receive the written recommendation of the arbitrator, officer, or panel, including a statement of the basis for the recommendations, and

(ii) to receive a written decision of the health care entity, including a statement of the basis for the decision.

A professional review body's failure to meet the conditions described in this subsection shall not, in itself, constitute failure to meet the standards of subsection (a)(3).

■ Most strikingly, section 11112(b) specifically provides that the failure of a review body to meet the enumerated conditions does not, per se, constitute a failure to meet the standards of section 11112(a)(3). "Indeed, '[i]f other procedures are followed, but are not precisely of the character spelled out in section 11112(b), the test of adequacy may still be met under other prevailing law.'" *Monroe v. AMI Hospitals of Texas, Inc.,* 877 F.Supp. 1022, 1030 (S.D.Texas 1994) (citing H.R.Rep. No. 903, at 10, reprinted in 1986 U.S.C.A.N. at 6393). Ultimately, the inquiry is whether the notice and hearing procedures were adequate or fair to the physician under the circumstances. See 42 U.S.C. section 11112(a)(4); *Smith v. Ricks,* 31 F.3d 1478, 1486 (9th Cir.1994); and *Fobbs v. Holy Cross Health Sys. Corp.,* 29 F.3d 1439, 1445 (9th Cir.1994). "[A]ssessing the 'circumstances' requires a fact-driven analysis." *Northeast Georgia Medical Center, Inc. v. Davenport,* 272 Ga. 173, 527 S.E.2d 548, 550 (2000) (citing *Rogers v. Columbia/HCA of Central Louisiana,* 971 F.Supp. 229, 236 (W.D.La.1997), aff'd. 140 F.3d 1038 (5th Cir.1998)).

■ In the case at bar, St. John's did not follow all of the requirements of section 11112(a)(3), as illustrated by plaintiff's allegations. However, our assessment of the voluminous record indicates the procedures followed were adequate under the totality of these circumstances. This conclusion is based on the specific facts of this

case and by no means should be interpreted as this court's finding that future hospitals will benefit from immunity under HCQIA, despite not having met all of the requirements of section 11112(a)(3), particularly the right to representation by an attorney.

The facts supporting our conclusion are as follows: AHIC informed plaintiff of the hearing date, notified plaintiff of the incidents which formed the basis for the summary suspension and provided plaintiff with patient charts and other documentation regarding the patient incidents AHIC would be reviewing; St. John's, like plaintiff, was not represented by counsel during the hearing; despite not being represented at the hearing, plaintiff was assisted by an attorney throughout the peer review process as evidenced by his attorney's request that Delfino not be present at the hearing; his attorney submitted a written statement to the Hospital Board, and assisted plaintiff in preparing his examination of witnesses at the hearing, evidenced by the fact that plaintiff's examination mirrors that of his attorney during a deposition of a key witness at the hearing[2]; further, at the hearing, plaintiff confronted and cross-examined End and Toscano, those responsible for the incident report, as well as other staff members who testified about other incidents of volatile behavior and staff abuse; plaintiff made a statement on his behalf at the close of the hearing; plaintiff's allegations against Delfino were not allowed as they were not relevant to the proceeding as addressed in the above issue; the hearing was transcribed and a copy was provided to plaintiff; and plaintiff was allowed to present oral and written arguments, with exhibits throughout the course of his appeal to the Hospital Board. At the end of AHIC hearing, plaintiff did not ask or attempt to submit a written statement. As for the ex parte investigations by members of the AHIC, we find nothing that indicates plaintiff was prejudiced by them.[3] We don't find any suggestion that relevant evidence was withheld or witnesses or other evidence supportive of plaintiff's case could have been presented to the board. Therefore we conclude, the notice and hearing procedures were adequate under these circumstances.

Plaintiff further alleges under section 11112(a)(4), that there was no reasonable belief the action was warranted by the facts known. He points to his allegations in the above issues to support this conclusion. Our review of the record indicates the hospital's peer review process was reasonable under HCQIA. Point denied.[4]

 In his second point on appeal, plaintiff alleges the trial court erred in dismissing his claim for malicious prosecution in that the overwhelming weight of authority holds the wrongful initiation or procurement of an administrative proceeding gives rise to a claim for malicious prosecution. We disagree.

 The elements of a claim for malicious prosecution are: 1) commencement of an earlier suit or prosecution against plaintiff; 2) the instigation by defendant; 3) termination of the proceeding in plaintiff's favor; 4) lack of probable cause for the prosecution; 5) malice by defendant in instituting the prosecution; and 6) damage to plaintiff. *Fust v. Francois*, 913 S.W.2d 38, 43–44 (Mo.App. E.D.1995).

2. Plaintiff relies on *LeMasters v. The Christ Hospital*, 791 F.Supp. 188 (S.D.Ohio 1991) to support the idea that if a hospital does not allow the physician to retain representation, then the HCQIA immunity does not apply. In *LeMasters*, HCQIA did not apply because the plaintiff/physician action was a Title VII claim, which is specifically excluded from HCQIA. Any further statements by the *LeMasters* court were dicta.

3. See also *Sugarbaker v. SSM Health Care*, 190 F.3d 905, 915–16 (8th Cir.1999).

4. Plaintiff also raises an argument under the doctrine of respondeat superior. However, this argument is not set out in the point relied on and not properly referenced to in the legal file, therefore, we decline to review it. See generally *Steward v. Goetz*, 945 S.W.2d 520, 528 (Mo.App. E.D.1997).

■ Plaintiff concedes there is no Missouri authority that authorizes an action for malicious prosecution in this context but contends, "the overwhelming weight of authority from other jurisdictions holds that the wrongful initiation or procurement of an administrative proceeding gives rise to a claim for malicious prosecution." We decline to extend a claim for malicious prosecution in this area, as we agree with the trial court's conclusion that the procedure utilized by St. John's in the case at bar does not constitute an "administrative proceeding" for malicious prosecution purposes. The term "administrative proceeding" means a proceeding before a public agency or public corporation for purposes of malicious prosecution claims, and disciplinary proceedings by private employers do not constitute such. Point denied.

■ In his third point on appeal, plaintiff alleges the trial court erred in dismissing his claim for abuse of process in that the better reasoned authorities hold that a claim for abuse of process may be based on the abuse of administrative process. We disagree.

■ The elements of a claim for abuse of process are: 1) an illegal, improper or perverted use of duly issued legal process that is not warranted or authorized; 2) an improper purpose in exercising the use of process; and 3) resulting damage. *Lafferty v. Rhudy*, 878 S.W.2d 833, 836 (Mo.App. W.D.1994) (citing *Stafford v. Muster*, 582 S.W.2d 670, 678 (Mo.banc 1979)).

Plaintiff concedes Missouri courts have not addressed this issue, but courts in other states have held that abuse of administrative processes may give raise to a claim for abuse of process. Again, we decline to extend the law to the case at bar based on the trial court's resolution of the preceding point and his conclusions on abuse of process. Specifically the trial court stated that the phrase "abuse of process" refers to a willful, definite act not authorized by process or aimed at an objective not legitimate in the proper employment of the process. *Ritterbusch v. Holt*, 789 S.W.2d 491 (Mo.banc 1990). Legal process is defined as "process which emanates from or rests upon court authority, and which constitutes a direction or demand that the person to whom it is addressed perform or refrain from doing some prescribed act." 1 Am.Jur.2d Abuse of Process section 2. Process refers to papers issued by a court to bring a party or property within its jurisdiction. *Chemawa Country Golf, Inc. v. Wnuk*, 9 Mass. App.Ct. 506, 402 N.E.2d 1069, 1071 (1980). The actual use of the process after its issuance is an essential element. 72 C.J.S. Process section 108. Abuse of process is not appropriate where the action is confined to its regular function even if the plaintiff had an ulterior motive in bringing the action, or if the plaintiff knowingly brought the suit upon an unfounded claim. It is where the claim is brought *not* to recover on the cause of action stated, but to accomplish a purpose for which the process was not designed that there is an abuse of process. 1 Am.Jur.2d section 11. Abuse of process presupposes an originally valid regular process duly and properly issued. 72 C.J.S. Process section 107. In the case at bar, plaintiff did not allege the issuance of process, as such term is used for the tort of abuse of process. Therefore, he has not stated a claim for abuse of process. Point denied.

■ In his fourth point on appeal, plaintiff alleges the trial court erred in dismissing his claim for retaliation for his disclosures to Farrell and St. John's of the improper, illegal activities and practices of Delfino, in that plaintiff sufficiently set forth the elements and each of the defenses raised by defendants are without merit. We disagree.

■ Generally, it has been held that a contractual employee cannot maintain a cause of action for wrongful discharge. *Luethans v. Washington University*, 894 S.W.2d 169, 172–73 (Mo.banc 1995). However, the question of whether liability may exist for a "wrongful" failure to renew a

contract or what types of damages may be recovered for a breach of contract in a "whistleblower" situation were questions left open in *Luethans. Id.* at 172. The law is clear, however, that to sustain this type of claim, the "petition must specify the legal provision violated by the employer, and it must affirmatively appear from the face of the petition that the legal provision in question involves a clear mandate of public policy." *Adolphsen v. Hallmark Cards, Inc.,* 907 S.W.2d 333, 338–39 (Mo. App. W.D.1995). Plaintiff failed to identify any specific statute, constitutional provision or regulation that was violated, and therefore the trial court did not err in dismissing this claim.[5] Plaintiff alternatively argues his employment status is factually and legally indistinguishable from that of an employee at will. The record does not support his argument. Point denied.

In his fifth and six points on appeal, plaintiff alleges the trial court erred in dismissing his claims against St. John's and O & MS for tortious interference with his business relationships and expectancies contained in counts V and VIII, in that plaintiff sufficiently set forth the elements of his claims and *Richardson v. St. John's Mercy Hosp.,* 674 S.W.2d 200 (Mo.App. E.D.1984) does not prohibit a claim for damages by a physician against a private hospital or a private corporation. We disagree.

█ To state a claim for tortious interference with contract or business expectancy, a plaintiff must plead and prove: 1) a contract or valid business expectancy; 2) defendant's knowledge of the contract or expectancy; 3) intentional interference by the defendant inducing or causing a breach

of the contract or expectancy; 4) absence of justification; and 5) damages. *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 316 (Mo.banc 1993).

█ Under the first element, the existence of a valid business expectancy will not be found where the facts showed a mere hope of establishing a business relationship which was tenuous. *Bell v. May Dept. Stores Co.,* 6 S.W.3d 871, 876 (Mo. banc 1999).

█ As for the claim against St. John's, the general rule in Missouri is that the exclusion of a physician from practicing in a private hospital is a matter which rest in the discretion of the managing authorities. *Richardson,* 674 S.W.2d at 201. In *Richardson,* the court explains *Cowan v. Gibson,* 392 S.W.2d 307, 308 (Mo.1965), stating *Cowan* states the general rule but illustrates an exception to it which allows a physician to sue other physicians for conspiracy but not a private hospital. *Id.* This rule of law coupled with the fact that St. John's had a legal right to summarily suspend and ultimately terminate plaintiff's privileges mandates the conclusion that the trial court did not err. Point denied.

As for O & MS, we agree with the trial court that the plaintiff's allegations against Delfino, as they are relevant to this claim, would apply to him individually or based on his relationship with St. John's, and not to O & MS. Point denied.

█ In his seventh point on appeal, plaintiff alleges the trial court erred in dismissing his claims for conspiracy contained in count VI because the petition sufficiently sets forth the elements of a claim of conspiracy and *Richardson,* supra,

---

5. In the trial court's October 28, 1996 judgment, it mentions plaintiff alternatively requested leave to amend his petition to identify specific provisions. Plaintiff failed to raise the issue, of whether the court's denial of his leave to amend was error, in his point relied on and therefore we decline to address this issue. See *Chancellor Development Co., v. Brand,* 896 S.W.2d 672, 678 (Mo.App. E.D.

1995) (finding issues not raised in the point relied on are not preserved for appellate review.). We note that reviewing such an issue is further frustrated by the fact that plaintiff has failed to cite in his brief where in the legal file he requested such a leave to amend. Plaintiff only cites the trial court's subsequent judgment.

does not prohibit such a claim against a private hospital. We disagree.

The elements that must be established under a claim of conspiracy are: 1) two or more persons; 2) with an unlawful objective; 3) after a meeting of the minds; 4) committed at least one act in furtherance of the conspiracy; and 5) plaintiff was thereby damaged. *Rice v. Hodapp,* 919 S.W.2d 240, 245 (Mo.banc 1996). There can be no cause of action for conspiracy in the absence of an underlying wrongful act or tort. *Williams v. Mercantile Bank of St. Louis,* 845 S.W.2d 78, 85 (Mo.App. E.D.1993). If the underlying tort claims failed to state causes of action or were rejected by the jury at trial then a claim of conspiracy based on those tort claims will not stand. *Id.; Bockover v. Stemmerman,* 708 S.W.2d 179, 182 (Mo. App. W.D.1986).

In the case at bar, the underlying tort claims were either dismissed or there was a defendant's verdict at trial as to one or all defendants, resulting in the lack of a conspiracy.[6] Point denied.

In his eighth point on appeal, plaintiff alleges the trial court erred in its numerous orders[7] which limited plaintiff's discovery and presentation of relevant evidence regarding Delfino's patient care misconduct to those cases and records contained in St. John's Exhibit 40. Plaintiff alleges Exhibit 40 did not "define the universe of patient records" that were relevant and material to plaintiff's claims of patient care misconduct against Delfino and further he was thereby denied the opportunity to challenge the truthfulness of Delfino's testimony. We disagree.

The trial court has broad discretion to control discovery, and an appellate court should not disturb its rulings absent an abuse of discretion. *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo.banc 1997). "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 648 (quoting *Anglim v. Missouri Pac. R.R.,* 832 S.W.2d 298, 303 (Mo.banc 1992). "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." *Id.*

The court may order any party to produce documents or papers which contain evidence relevant to the subject matter involved in the pending action. Rule 56.01. The tendency is to broaden the scope of discovery when necessary to expedite justice and guard against surprise, however the evidence requested must appear relevant and material, or tend to lead to the discovery of admissible evidence. *State ex rel. Anheuser v. Nolan,* 692 S.W.2d 325, 327 (Mo.App. E.D.1985). The discovery provisions were not designed or intended for untrammeled use of a factual dragnet or fishing expedition. *State ex rel. Kroger Co. v. Craig,* 329 S.W.2d 804, 806 (Mo.App.Spr.D.1959). It is the affirmative duty and obligation of the trial judge to prevent subversion of pre-trial discovery into a "war of paper" for whatever reason. *Anheuser,* 692 S.W.2d at 328.

In the case at bar, plaintiff attempted to obtain discovery of evidence of Delfino's purported improper and illegal activities and practices in the form of various hospital, medical and billing records. Plaintiff was allowed such discovery but was limited to those "incomplete" records contained in exhibit 40. The trial court limited the plaintiff to exhibit 40 in that

---

**6.** The personal stake exception is inapplicable because the final decision on questions of staff privileges rest with the hospital and its board and not Delfino who was not even present at plaintiff's hearing. *See Willman v. Heartland Hosp. East,* 836 F.Supp. 1522, 1529 (W.D.Mo. 1993), aff'd. 34 F.3d 605 (8th Cir.1994).

**7.** October 24, 1997 Order; January 26, 1998 Order; and February 6, 1998 Order.

those are the incidents upon which plaintiff himself relied when making his claims against Delfino. Our review of exhibit 40 reveals that it consists of approximately 1300 pages of medical records [8] contained in six volumes of the legal file. Plaintiff does not demonstrate how it is incomplete nor what more he could have obtained, in other words, how he was prejudiced. Plaintiff discussed alleged improper and illegal activities of Delfino in his direct examination and used the records against Delfino in the cross-examination of Delfino. We find no abuse of discretion by the trial court in limiting plaintiff's discovery as it did. Point denied.

In his ninth point on appeal, plaintiff alleges the trial court erred in refusing to admit into evidence relevant, probative and competent evidence, including: 1) evidence impeaching the credibility of Delfino and End; 2) evidence demonstrating the motives of Delfino for procuring the summary suspension of plaintiff; 3) evidence demonstrating St. John's efforts to dissuade plaintiff from appealing his suspension; 4) evidence demonstrating Delfino violated relevant ethical standards by his practices in the care and treatment of patients; and 5) evidence establishing plaintiff was suspended in retaliation for disclosing Delfino's improper and illegal activities and practices to St. John's. We disagree.

"Where evidence is excluded, the issue is whether the trial court abused its discretion, not whether the evidence was admissible ." *Howe v. ALD Services, Inc.*, 941 S.W.2d 645, 654 (Mo.App. E.D. 1997). "We defer to the trial court because of its superior opportunity to evaluate the proffered evidence in the context of the trial." *Id.* "Furthermore, the refusal to admit evidence does not constitute reversible error unless it would have changed the result." *Id.*

In the case at bar, plaintiff alleges the trial court abused its discretion by "imper-

missibly and prejudicially limiting [plaintiff's] ability to challenge the truthfulness of [Delfino's] testimony about the care and treatment" he rendered to patients. Plaintiff alleges he was prejudicially limited during the cross-examination of Delfino and when he was not allowed to offer supposed contradictory evidence from Drs. Weber, Lebsack and Chehval. Further plaintiff feels the court abused its discretion in sustaining defendants' objection to the testimony of Michelle Jewell about the reputation of End among her friends and associates for truthfulness. We disagree. We have reviewed the transcript pages plaintiff supplied regarding this alleged abuse of discretion by the trial court and find the evidence was cumulative and/or irrelevant. Nothing in the record supplied by plaintiff constituted reversible error.

Plaintiff further alleges the trial court abused its discretion in sustaining defendants' objections to numerous other trial exhibits, including exhibit 11, a memo from Marbarger to Farrell, to show Delfino's motives and activities surrounding "his procuring the summary suspension of [plaintiff]"; exhibits 17 and 17A, transcript and tape recording of plaintiff's December 20th meeting with Farrell and Chehval to show St. John's efforts to dissuade plaintiff from appealing his summary suspension; exhibit 28, the ethical and religious directives for Catholic hospitals dealing with ghost surgery and unnecessary procedures to show standards for practitioners in Catholic hospitals; exhibits 33, 34 and 35, memoranda of telephone calls between Delfino and Farrell to show that plaintiff advised Farrell in August of 1993 of the alleged improper and illegal activities and practices of Delfino.

The admissibility of evidence at trial is in the discretion of the trial court. *State v. Neely*, 979 S.W.2d 552, 561 (Mo. App. S.D.1998). Based on our review of the record, we find no abuse of discretion by the trial court. Point denied.

---

**8.** We use the term "medical records" generically, therefore, in no way implying that the volumes did not contain hospital, medical and billing records.

In his tenth point on appeal, plaintiff alleges the trial court erred in granting defendants' motion for directed verdict on the issue of punitive damages, and upon reconsideration of all the evidence, when it refused to vacate said ruling because the evidence showed that plaintiff made a submissible case on the issue of punitive damages on each of counts IV, V, VII and VIII in that the evidence established defendants' conduct was outrageous because of their evil motive or reckless indifference to the rights of others. We disagree.

Plaintiff must prevail on his underlying claim in order to submit punitive damages to the jury. *Klein v. General Electric Co.,* 728 S.W.2d 670, 671 (Mo. App. E.D.1987). "A punitive damage claim is not a separate cause of action, it must be brought in conjunction with a claim for actual damages." *Id.* Punitive damages are an extraordinary and harsh remedy and should be applied only sparingly. *Rodriguez v. Suzuki Motor Corp.,* 936 S.W.2d 104, 111 (Mo.banc 1996). Plaintiff is required to present clear and convincing evidence of evil motive and reckless indifference to his rights before punitive damages can be considered. *Id.*

The only claim that plaintiff prevailed on was his fraud claim. Plaintiff alleges the evidence adduced at trial established that Delfino and O & MS procured the summary suspension of plaintiff in order to retaliate against him for his disclosure of the improper and illegal activities and practices of Delfino, to silence plaintiff's criticisms of Delfino, to drive plaintiff from the St. John's medical community and to cast a pall upon his reputation. None of the plaintiff's foregoing allegations dealt with evidence that the misrepresentations in the fraud claim were made with any evil motive or reckless indifference to the rights of plaintiff. Therefore, plaintiff's point is denied.

In his eleventh point on appeal, plaintiff alleges the trial court erred in failing to grant plaintiff's alternative motion for additur because the unchallenged evidence demonstrated the amount of plaintiff's damages with respect to his fraud claims in count VII in that the evidence showed the amount of plaintiff's receipts retained by Delfino and O & MS and that they paid no expenses related to such receipts. We disagree.

To be entitled to additur, plaintiff must demonstrate "the jury's verdict is inadequate because the amount of the verdict is less than fair and reasonable compensation for plaintiff's injuries and damages." RSMo section 537.068. To sustain a motion for additur, the trial court must first determine if good cause warrants a new trial for damages or the verdict is against the weight of the evidence. *Massman Const. v. Highway and Transp. Com'n,* 914 S.W.2d 801, 803 (Mo.banc 1996).

Plaintiff's exhibit 36A, prepared by Robert Wright, C.P.A., according to plaintiff, demonstrates that Delfino and O & MS retained receipts for services provided by plaintiff totaling $559,993 plus interest thereon of $341,803, totaling $901,736. Plaintiff maintains Delfino and O & MS did not challenge said computation. We disagree. Plaintiff was awarded $265,000.

The transcript reveals a rigorous examination of Wright, illustrating the numerous expenses/costs that Wright did not take into consideration in his computation. Further plaintiff has not demonstrated his right to interest in this case. Therefore, the plaintiff has failed to demonstrate that the amount of the verdict was less than fair and reasonable compensation for plaintiff's injuries and damages. Point denied.

## IV. ST. JOHN'S CROSS–APPEAL

St. Johns raises one point in its cross-appeal. It alleges the trial court abused its discretion in denying its motion for attorney fees under 42 U.S.C. section 11113 because plaintiff's claims or litigation conduct or both, were unreasonable in that his claims were legally untenable and

clearly precluded by controlling precedent, and his litigation conduct was vexatious and harassing. We disagree.

■ The standard of review in reviewing the court's decision regarding the award of attorney fees and costs under HCQIA is whether there has been an abuse of discretion. *Mathews v. Lancaster General Hosp.*, 87 F.3d 624, 642 (3rd Circuit 1996). To recover under section 1113 defendants must establish: 1) they are among the persons covered by section 11111; 2) the standards set in section 11112(a) were followed; 3) they substantially prevailed; and 4) plaintiff's claims or conduct during the litigation were frivolous, unreasonable, without foundation or in bad faith. *Id.*

In the case at bar, a review of the record demonstrates the trial court did not err in denying St. John's motion for attorney fees in that plaintiff's claims and/or litigation conduct were not unreasonable because his claims were not legally untenable, and/or clearly precluded, particularly in light of St. John's minimal following of the standards set in section 11112(a) as set out in point one.

## V. DELFINO AND O & MS' CROSS–APPEAL

Delfino and O & MS raise two points in their cross-appeal. In their first point, defendants allege the trial court erred in denying their motion for directed verdict and motion for JNOV on plaintiff's fraud claim because a fraud claim is barred by RSMo section 516.120(5) if the claim is not brought within five years after a plaintiff discovers, or should have discovered the facts constituting the fraud; the statute applies in that the evidence showed plaintiff discovered or should have discovered, no later than 1988, that St. John's provided and paid for office space and personnel provided to plaintiff. We disagree.

■ Section 516.120(5), RSMo (1994), provides that an action for relief for fraud must be commenced within five years, and that "... the cause of action in such case to be deemed not to accrue until the discovery by the aggrieved party, at any time within ten years of the facts constituting the fraud." The cause of action accrues when a plaintiff has sufficient facts to inform a reasonable person that a fraud has been committed. *Vogel v. A.G. Edwards & Sons, Inc.*, 801 S.W.2d 746, 755 (Mo.App. E.D.1990). Further, a party to contractual negotiations is entitled to rely on a positive representation of fact by the other party. *Smith v. New Plaza Pontiac Co.*, 677 S.W.2d 941, 945 (Mo.App. W.D. 1984). "If a party takes affirmative action to conceal the fraud, the statute is tolled until the fraud is discovered." *Kansas City v. W.R. Grace & Co.*, 778 S.W.2d 264, 273 (Mo.App. W.D.1989).

■ In the case at bar, plaintiff asserted a fraud claim against Delfino and O & MS based upon representations made by Delfino to plaintiff that O & MS would provide office space and staffing to plaintiff pursuant to the consulting agreement. Although plaintiff was aware St. John's "provided" office space, non-professional personnel, equipment and supplies to him and other oral surgeons affiliated with O & MS, plaintiff testified he was informed by Delfino, both before and after entering the consulting agreement, that O & MS has to reimburse St. John's for these benefits, and therefore plaintiff had to reimburse O & MS.[9] Plaintiff testified that Delfino regularly represented, from 1987 until 1993, that O & MS was required to reimburse St. John's for the expenses of the office space and personnel. Further, for tax purposes, plaintiff was aware St. John's provided office space and staffing but believed there was a distinction between providing these items and paying for them. Our review of the record indicates the trial court did not err in denying defendant's motion for directed verdict and motion for JNOV, as plaintiff was led to believe Delfino's misrepresentations and did not discov-

---

**9.** Delfino admitted that he retained 50% of plaintiff's receipts.

er the fraud until a 1993 conversation with Farrell, St. John's CEO. Point denied.

In their second point on their cross-appeal, defendants allege, alternatively, the trial court erred in denying their motion for directed verdict and motion for JNOV on plaintiff's fraud claim because plaintiff failed to establish the elements of fraud. We disagree.

The elements of fraudulent misrepresentation are: 1) a false, material representation; 2) the speaker's knowledge of its falsity or his ignorance of its truth; 3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; 4) the hearer's ignorance of the falsity of the representation; 5) the hearer's reliance on its truth; 6) the hearer's right to rely thereon; and 7) the hearer's consequent and proximately caused damages. *Dierker Associates, D.C., P.C. v. Gillis,* 859 S.W.2d 737, 746–47 (Mo.App. E.D.1993).

In the case at bar, the consulting agreement between defendants and plaintiff provides "The Company shall employ and make available to [plaintiff], at Company's sole expense, all non-physician personnel needed for [plaintiff] to properly perform the services covered by this Agreement." Delfino admitted that his execution of the above agreement was a representation to plaintiff that the foregoing statement was true. These facts coupled with testimony regarding Delfino's constant misrepresentation demonstrate the first six elements including plaintiff's subsequent reliance thereon. Our further review of the record demonstrates plaintiff did not fail to establish the requisite elements of the fraud claim.

Based on the foregoing, the judgment is affirmed.

SIMON and MARY RHODES RUSSELL, JJ., concur.