**Dr. John DOE, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Defendants.**

Civ. A. No. 94–3429.

United States District Court, E.D. Pennsylvania.

Dec. 29, 1994.

G. Alexander Bochetto and Koji F. Fukumura, Bochetto and Lentz, P.C., Philadelphia, PA, for plaintiff.

Susan Dein Bricklin, U.S. Attorney's Office and Sue Ann Unger, Office of Atty. Gen., Philadelphia, PA, for defendants.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

Plaintiff is an anonymous doctor of osteopathy, who filed this case identifying himself only as Dr. John Doe ("Dr. Doe"). In 1986, Dr. Doe pled guilty to mail fraud. In February 1992, after a five-year suspended sentence, Dr. Doe was fined and given a permanent reprimand by Pennsylvania's State Board of Osteopathic Medicine ("the Board"). Shortly after the disciplinary order against Dr. Doe took effect, the Board reported Dr. Doe's reprimand to the National Practitioner Data Bank ("the Data Bank"). Dr. Doe challenged the report administratively within the United States Department of Health and Human Services ("HHS"), which administers the Data Bank. Two years later, before the Secretary of HHS had rendered a final decision on his challenge, Dr. Doe filed this lawsuit.

Dr. Doe is seeking declaratory relief pursuant to the Health Care Quality Improvement Act of 1986 ("the HCQI Act"), 42 U.S.C. § 11101 *et seq.*, certain HHS regulations pertaining to the Data Bank,[1] and the Civil Rights Act, 42 U.S.C. § 1983, against the Board and seven individual members of the Board ("the Commonwealth defendants"). He is also seeking declaratory and injunctive relief against HHS and its Secretary, Donna E. Shalala, ("the Federal defendants") under the above-mentioned provi-

---

1. Codified at 45 C.F.R. § 60.1 *et seq.*

sions, the Privacy Act, 5 U.S.C. § 552(a), and the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*

The basis of Dr. Doe's case is that the information about Dr. Doe's criminal record which was transmitted to and disseminated by the Data Bank was "misleading and grossly unfair" and has caused Dr. Doe "severe and irreparable harm to his career as a physician." *See* Plaintiff's Brief in Opposition to Federal Defendants' Motions to Dismiss at 4–5. Dr. Doe states that Blue Cross and Blue Shield have revoked his prior acceptance into the Greater Philadelphia Provider network, which may cost him 50% of his patients. *See* Complaint at ¶ 57. The Data Bank, Dr. Doe contends, "has become a "Black List" for physicians and an excuse for HMO's to deny physicians participation despite their credentials." *See* Plaintiff's Brief in Opposition to Federal Defendants' Motion to Dismiss at 9.

Both the Commonwealth defendants and the Federal defendants have filed motions to dismiss pursuant to Rule 12(b)(1) and (6). For the reasons set forth below, I am granting defendants' motions to dismiss.

## I. FACTUAL BACKGROUND

Dr. Doe's mail fraud conviction came about as a result of an incident which took place in 1982, when Dr. Doe, who was practicing osteopathy in Philadelphia, was approached by an undercover United States Postal Inspector. The six-count federal indictment against Dr. Doe filed in 1986 alleged that Dr. Doe collaborated with the undercover inspector to fabricate a fraudulent medical claim in connection with a fictitious automobile accident. Dr. Doe pled guilty to one count of mail fraud and received a five-year suspended sentence from United States District Judge Clifford Scott Green. He was also ordered to perform 2,000 hours of community service, pay a fine of $1,000 and make restitution in the amount of $240.

In 1991, an Order to Show Cause was entered by the Board, which directed Dr. Doe to show cause why the Board should not revoke, suspend or otherwise restrict his li-

cense to practice osteopathy, and impose a civil penalty of up to $1000 for each violation of the Osteopathic Medical Practice Act, in light of his 1986 guilty plea. A Consent Agreement followed between the Board and Dr. Doe, in which Dr. Doe acknowledged his guilty plea and also stated that:

[Dr. Doe] admits that his license to practice osteopathic medicine and surgery within the Commonwealth of Pennsylvania is subject to disciplinary action ..., being convicted of a crime involving moral turpitude, and, in lieu of formal administrative hearing at which respondent would present mitigation evidence, consents to the issuance by the Board of the following Order:

    a. Respondent shall be formally reprimanded.

    b. Respondent shall pay a civil penalty of $1,000.

*See* Exhibit 3 to Federal Defendants' Motion to Dismiss at ¶ 8.

Pursuant to the Consent Order, the Board entered an Order on February 13, 1992 which stated that Dr. Doe was in violation of Section 15(a)(4) of the Osteopathic Medical Practice Act. The Order formally reprimanded Dr. Doe, made the reprimand a permanent part of Dr. Doe's record, and imposed a $1,000 civil penalty.

On March 2, 1992, the Board reported Dr. Doe's reprimand to the Data Bank. Dr. Doe received a notice of an Adverse Action Report to the Data Bank on March 16, 1992, and filed a dispute with the Data Bank on April 8, 1992. On May 5, 1994, Dr. Doe requested the Secretary of HHS to review his dispute, as provided by 45 C.F.R. 60.14(c)(2). On June 3, 1994, before the Secretary issued a final decision, Dr. Doe filed this complaint. Although the Secretary subsequently denied Dr. Doe's request on August 25, 1994,[2] Dr. Doe was given an opportunity to submit a statement of 600 characters about his disagreement to the Data Bank for inclusion in his report.

The Complaint filed by Dr. Doe alleges that the Data Bank regulations are arbitrary and capricious, that his Fifth Amendment due process rights have been violated, and

2. *See* Exhibit 7 to the Federal Defendants' Motion to Dismiss.

that the report to the Data Bank is inaccurate, misleading, and incomplete. He seeks an injunction requiring HHS to eliminate his report from the Data Bank, and a declaratory judgment to the effect that all reports to the Data Bank concerning his mail fraud conviction are unlawful and void. In the alternative, he seeks an amendment to the report to make it conform to his viewpoint.

## II. THE HEALTH CARE QUALITY IMPROVEMENT ACT

The HCQI Act was enacted to improve the quality of medical care and to "restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the previous damaging or incompetent performance." 42 U.S.C. § 11101. A national reporting system was established in order to "follow bad doctors from place to place." *Imperial v. Suburban Hospital Association, Inc.,* 37 F.3d 1026, 1028 (4th Cir. 1994), quoting H.R.Rep. No. 903, 99th Cong.2d Sess. (1986), reprinted in 1986 U.S.C.C.A.N. at 6385. *See also Bryan v. James E. Holmes Regional Medical Center,* 33 F.3d 1318 (11th Cir.1994).

One means of achieving this end is the reporting of adverse licensure actions undertaken by state medical boards. The state boards are required to report any disciplinary action

> ... which revokes or suspends (or otherwise restricts) a physician's license, or censures, reprimands or places on probation a physician, for reasons relating to the physician's professional competence or professional conduct. 42 U.S.C. § 11132(a)(1)

The report to the Data Bank is to include the name of the physician, a description of the acts or omissions which caused the licensure act, and such other information as appropriate. 42 U.S.C. § 11132(a)(2). State boards are required to report adverse licensure information "regularly." 42 U.S.C. § 11134(a). However, information regarding licensure actions must be submitted to the Data Bank with 30 days of the date the licensure action was taken. 45 C.F.R. § 60.5(b). The HCQI Act also obligates state boards to insure the accuracy of the reports they make to the Data Bank, and provides that anyone who is the subject of such a report can challenge its accuracy. 45 C.F.R.

§ 60.6–14(a)

Section 11101 of the HCQI Act provides a qualified immunity from damages actions for hospitals, doctors, and others who participate in a "professional review action." This qualified immunity was also extended to persons providing information to professional review bodies. 42 U.S.C. § 11111(a)(2). The qualified immunity was enacted because Congress found that the threat of litigation in both federal and state court "unreasonably discourages physicians from engaging in meaningful peer review." 42 U.S.C. § 11104(4); *see also Bryan, supra,* at 1321.

## III. THERE IS NO PRIVATE CAUSE OF ACTION UNDER THE HCQI ACT

■ The HCQI Act does not expressly create a private cause of action by a physician. Plaintiff acknowledges this point, but argues that the inclusion of the immunity section, and a section limiting attorneys' fees implies a private cause of action by physicians.

Neither the immunity section of the HCQI Act, or § 11113, the attorneys' fees section, provide any meaningful support for plaintiff's position. Section 11113 reads as follows:

> ... In any suit brought against a defendant, to the extent that a defendant met the standards set forth under [42 U.S.C. § 11112] and the defendant substantially prevails, the court shall ... award to a substantially prevailing party defending against any such claim the cost of the suit attributable to such claim, including a reasonable attorney's fee, if the claim was frivolous, unreasonable, without foundation, or in bad faith ... 42 U.S.C. § 11113

This section could hardly be read as implying a private cause of action for physicians. To the contrary, the section limits the award of attorneys' fees to prevailing defendants, defendants who met the standards of § 11112 relating to professional review actions and have therefore qualified for the immunity set forth in § 11101 of the HCQI Act. The

section has the effect of discouraging litigation by physicians, not encouraging it.

Although few courts have considered the specific issue of whether a private right of action by physicians exists under the HCQI Act, the courts which have considered the issue have answered it in the negative.

In *Goldsmith v. Harding Hospital, Inc.,* 762 F.Supp. 187 (S.D.Oh.1991), the federal district court for the Southern District of Ohio concluded that there was no private right of action under the HCQI Act. The plaintiff in *Goldsmith* was a physician who had been suspended from the defendant hospital's psychiatric residency program. In dismissing the lawsuit following a Rule 12(b)(6) motion by defendant, the court applied the factors annunciated by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). These include:

1: whether the plaintiff is a member of the class for whose special benefit the statute was enacted;

2: whether there is any indication of legislative intent, explicit or implicit, to create or deny a remedy;

3: whether it would be consistent with the underlying purpose of the act to imply a remedy; and

4: whether the cause of action is one traditionally relegated to state law so that it would be inappropriate to infer a cause of action solely on federal law. 422 U.S. at 78, 95 S.Ct. at 2088.

The reasoning behind the *Goldsmith* decision was recently followed by the Tenth Circuit Court of Appeals in *Hancock v. Blue Cross–Blue Shield of Kansas,* 21 F.3d 373 (10th Cir.1994), when it affirmed a dismissal of a case brought by a physician in the District of Kansas on the grounds that the HCQI Act did not create a cause of action.[3]

The facts of this case are different because Dr. Doe is not suing a former employer.

Instead, Dr. Doe is suing to silence the messenger bearing bad news about his criminal record to present and possible future employers.

None of the relevant *Cort v. Ash* factors weighs in favor of an implied cause of action in this case. As the immunity section suggests and the weight of case law has clearly established, Congress was not trying to create a cause of action in favor of aggrieved physicians when it passed the HCQI Act. On the contrary, the HCQI Act was enacted to benefit professional review bodies and patients, not physicians. The goal of the HCQI Act was to promote public awareness of incompetent or unprofessional physicians. Implying a cause of action under these circumstances would be to encourage one of the specific concerns—namely, allowing a doctor whose performance has been subjected to adverse action by his peers to escape the consequences of his past history via litigation—that the HCQI Act was designed to restrict.

■ I also find that the HHS regulations challenged by Dr. Doe, which were promulgated pursuant to the HCQI Act, are not arbitrary, capricious, or unsupported by the statute because, as plaintiff argues, they do not provide for expunging "stale information," or because the HHS regulations condition reporting requirements to the Data Bank on the date of licensure actions, as opposed to the date of the underlying acts. *See* Complaint at ¶ 92. The harm the HCQI Act sought to alleviate was that of incompetent doctors, specifically doctors who are identified by their colleagues as incompetent but "are dealt with in a way that allows them to continue to injure patients." H.R.Rep. No. 903, 99th Cong.2d Sess. at 1 (1986). Therefore, Congress decided against including any provision for removal of information carried on the Data Bank. The HCQI Act itself at § 11132(a) sets the "triggering date" as the date of the reporting of the incident,

3. Federal case law involving claims made under the HCQI Act shows that despite the immunity granted by § 11111, many recently-terminated physicians have filed suit against hospitals challenging their termination after a professional review procedure. In some instances, the claim was styled as an anti-trust claim. The qualified immunity extended to professional review actions has been upheld repeatedly and the cases dismissed, either by motions to dismiss or for summary judgment. *See e.g., Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991).

not the date of the incident itself, which renders plaintiff's second argument on this point untenable.[4]

Accordingly, I find that the HHS regulations relating to the Data Bank and codified at 45 C.F.R. § 60.1 *et seq.* are not arbitrary, capricious or unsupported by the HCQI Act.

## IV. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 ARE INVALID

### A. The Statute of Limitations

█ The statute of limitations on civil rights claims in Pennsylvania is two years. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). *See also Bougher v. University of Pittsburgh,* 882 F.2d 74, 78 (3d Cir.1989).

The Data Bank report Dr. Doe is challenging had to be filed within thirty days of the Board's reprimand order of February 13, 1992, and was filed on March 2, 1992. Dr. Doe received notice of an Adverse Action Report on March 16, 1992 and filed a dispute concerning the Data Bank report by April 8, 1992. Therefore, Dr. Doe was certainly aware of the constitutional injury he alleges by mid-March or early April of 1992. This case was filed on June 3, 1994, which was over two years after Dr. Doe's claim accrued. Therefore, I find that plaintiff's civil rights claims are barred by the statute of limitations.

Nevertheless, I will also deal with the substance of plaintiff's due process claims, which I find to be without merit.

### B. Plaintiff's Due Process Rights

█ The right to hold specific private employment and follow a chosen profession free from unreasonable governmental interference comes from both the "liberty" and "property" concepts of the Fifth and Fourteenth Amendments. *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3

L.Ed.2d 1377 (1959); *Piecknick v. Commonwealth of Pennsylvania,* 36 F.3d 1250, 1259 (3d Cir.1994).

Dr. Doe alleges that his right to due process under the Fifth Amendment was violated because HHS did not allow him notice or opportunity to be heard, specifically regarding "the issue of whether the mail fraud conviction and reprimand resulting therefrom, was a reportable incident relating to his professional conduct or professional competence as required by regulation." *See* Plaintiff's Reply in Opposition to Federal Defendants Motion to Dismiss, at 10. In order to prevail on this claim, plaintiff must show that he has a cognizable liberty or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 567–77, 92 S.Ct. 2701, 2704–09, 33 L.Ed.2d 548 (1972). Dr. Doe attempts to do this by stating that he suffered "irretrievable injury and severe deprivations to his liberty and property interests by curtailing his ability to engage in his occupation as an Osteopathic Physician and by damaging his reputation." *See* Complaint at ¶ 56.

#### 1. Plaintiff's Liberty Interest

█ Dr. Doe has no liberty interest at stake in this dispute. Many cases have stated that reputation does not receive special protection under the constitution. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Damage to reputation alone by the government is not a "liberty" or "property" interest sufficient to invoke the due process clause. *Id.* at 701, 96 S.Ct. at 1160.

In *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) the plaintiff was a clinical psychologist who received an adverse recommendation from a government agency which resulted in plaintiff being fired from his job at an Army hospital. The Supreme Court held that plaintiff failed to establish a violation of any constitutional right. *See also Randall v. United States,* 30 F.3d 518 (4th Cir.1994).

---

4. It is also important to note that Dr. Doe has an opportunity to provide his point of view to any potential employers who get the report off the Data Bank, and that Data Bank report recipients are advised that "Data received from the Data Bank should be used in combination with other sources of data in making determinations on granting privileges or in employment affiliation or licensure decisions." *See* Exhibit 11 to Federal Defendants' Motion to Dismiss.

■ In this instance, the Data Bank was not rendering a judgment on Dr. Doe's performance, or providing prospective employers with a recommendation as to his professional capabilities. It was merely recording a criminal conviction which was a matter of public record. As the Supreme Court stated in *Siegert* and *Paul,* action which damages the reputation of a plaintiff and causes that plaintiff harm in obtaining employment does not rise to the level of a "liberty" deprivation.

### 2. Plaintiff's Property Interest

■ A plaintiff alleging a property interest in a benefit protected by due process must go beyond showing "an unsubstantiated expectation" of the benefit. *Carter v. City of Philadelphia,* 989 F.2d 117, 119 (3d Cir. 1993). As the Supreme Court stated in *Roth,* to have a property right a plaintiff must have more than "an abstract need or desire ... he must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577, 92 S.Ct. at 2709. The Constitution does not create property interests. *Id.*

Dr. Doe cites the Pennsylvania Commonwealth Court case of *Pennsylvania Medical Society v. Foster,* 147 Pa.Commw. 528, 608 A.2d 633 (1992) as support for his position

that he has a property interest in practicing his profession. In that case the plaintiff medical society was challenging the constitutionality of the physician billing and reimbursement provisions of Pennsylvania's Motor Vehicle Financial Responsibility Law. The Commonwealth Court cited a long line of Pennsylvania cases stating that the right to practice a chosen profession was a protected interest. However, the *Foster* court also acknowledged "the state's police power to protect the public health, safety, welfare and morals by promulgating statues which reasonably regulate occupations." 608 A.2d at 637.

■ Such was the case here. Plaintiff has no conceivable "property" interest in having his conviction excluded from the Data Bank. It also must be noted that plaintiff was afforded an opportunity to contest the Date Bank report with HHS, an opportunity he availed himself of and lost.

### V. PLAINTIFF'S OTHER CLAIMS

Dr. Doe challenges the accuracy of the report, and claims that it is misleading and incomplete. I find no merit in these claims. The report itself reads as follows:

SECTION C: ADVERSE ACTION INFORMATION REPORTED

| | |
|---|---|
| DATE OF ACTION: | 02/13/92 |
| ADVERSE ACTION CODE: | 406.00 REPRIMAND |
| LENGTH OF ACTION: | PERMANENT |
| EFFECTIVE DATE OF ACTION: | 02/13/92 |
| ACT/OMISSIONS DESCRIPTION: | CIVIL PENALTY $1,000.00 RESPONDENT PLED GUILTY TO ONE COUNT OF MAIL FRAUD |

I find that this report is accurate. It also provides precisely the sort of information the HCQI Act intended it to provide. Dr. Doe was advised by HHS after he disputed the report that he could include a statement of up to 600 characters describing his disagreement with the report, which would be included permanently with the report. This procedure would allow Dr. Doe the opportunity to complete the record in connection with any part of it he deems incomplete. As de-

scribed above, the timing of the report, which Dr. Doe protests as being untimely because it was made years after his actual conviction, was triggered by the Board reprimand. There can also be little question that a mail fraud conviction, based on the fabrication of a medical claim, relates to Dr. Doe's professional competence or professional conduct.

■ I am in agreement with defendants' position that the specific reporting provisions encompassed in the HCQI Act supersedes

any claims Dr. Doe might have under the Privacy Act.[5]

Therefore, I am entering the following Order:

### ORDER

AND NOW, this 29th day of December, 1994, upon consideration of the motions to dismiss filed by the Federal and Commonwealth defendants, and plaintiff's responses, it is ORDERED that:

1. The Federal and Commonwealth defendants' motions to dismiss are GRANTED and plaintiff's claims in this case are DISMISSED in their entirety.

2. The Clerk of Court is directed to list this case as CLOSED.

---

5. Because I have found plaintiff's statutory and constitutional claims to be without merit, I will not rule on the Federal defendants' claim of sovereign immunity. *See e.g., Piecknick, supra,* at 1262, fn. 12. (3d Cir.1994). I also make no ruling on the validity of the Commonwealth defendants' argument that the complaint should be dismissed pursuant to Rule 8(a) because plaintiff filed this case using a pseudonym.