# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-3403

———————

Arthur J. Misischia, Dr., D.M.D.,     *
                                       *

       Plaintiff - Appellant,        *

                                         *    Appeal from the United States

v.                                    *    District Court for the

                                         *    Eastern District of Missouri.

St. John's Mercy Health Systems, et al.,    *

                                         *

       Defendants - Appellees.      *

———————

Submitted: April 17, 2006
Filed: August 8, 2006

———————

Before LOKEN, Chief Judge, LAY and BYE, Circuit Judges.

———————

LOKEN, Chief Judge.

At the conclusion of largely unsuccessful litigation in other courts, Dr. Arthur Misischia commenced this action against his former employers, St. John's Mercy Health Systems (St. John's) and Dr. John Delfino, and three St. John's supervisory employees. Misischia asserted claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(b)-(d), and a pendent state law conspiracy claim. The district court[1] dismissed the claims on res judicata and statute of limitation grounds. Misischia appeals. Reviewing the district court's dismissal of

———————

[1]The HONORABLE CAROL E. JACKSON, Chief Judge of the United States District Court for the Eastern District of Missouri.

the complaint *de novo*, we affirm.  See Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003) (standard of review).

## I. Background

In 1993, Delfino was the director and Misischia was the associate director of the oral and maxillofacial surgery residency program at St. John's hospital in St. Louis.  Misischia also performed surgeries at St. John's hospital as an independent contractor retained by Delfino's professional corporation.  Following reports of inappropriate patient contacts, St. John's terminated Misischia as associate director and suspended his staff privileges in October 1993.  Delfino also terminated his separate contract with Misischia.  As required, St. John's reported Misischia's suspension to the Department of Health and Human Services National Practitioner Data Bank [NPDB] in February 1994.  At St. John's request, Misischia underwent a psychiatric evaluation in March 1994 that revealed no disorder.  St. John's then ended the suspension and revised its adverse action report to the NPDB to read:  "Based on the receipt of a positive [psychiatric] evaluation, the summary suspension of Dr. Arthur Misischia has been revoked effective April 25, 1994."  However, St. John's also terminated Misischia's employment contract and staff privileges.

In October 1994, Misischia filed a lawsuit in Missouri state court against St. John's and Delfino, asserting various state law tort claims based on the allegation that Misischia's suspension, termination, and the adverse NPDB report were retaliation for his efforts to "blow the whistle" on fraudulent activity by Delfino and St. John's.  The trial court held that St. John's was immune from suit under the Health Care Quality Improvement Act, 42 U.S.C. §§ 11101 et seq., and dismissed some claims against Delfino.  A jury then found in favor of Misischia and against Delfino and his professional corporation on a fraud claim.  The decision was affirmed on appeal and final judgment entered in December 2000.  See Misischia v. St. John's Mercy Med. Ctr., 30 S.W.3d 848 (Mo. Ct. App. 2000).

In March 2001, counsel for Misischia wrote St. John's offering to release all claims if St. John's would submit a revised NPDB report deleting the reference to a psychiatric evaluation. St. John's responded, agreeing to submit the revised report if Misischia also agreed not to serve as a retained expert in lawsuits against St. John's and to pay an amount in satisfaction of St. John's pending motion for costs in the state court action. Protracted, unsuccessful negotiations ensued. In this action, Misischia alleges that defendants sought to discredit him by submitting an inaccurate NPDB report in 1994 and then refused to correct the inaccuracies in 2001 unless he acceded to their "extortionate" demands.

In March 2002, with negotiations at a standstill, Misischia filed a "subject statement" with the Department of Health and Human Services objecting to the content and accuracy of St. John's revised NPDB report. The agency concluded that the phrase "positive evaluation" in St. John's revised report could be misinterpreted as implying that Misischia suffers from a psychiatric disorder. Accordingly, St. John's amended the report to read: "Based on the receipt of an evaluation that found that Dr. Arthur Misischia was not suffering from any type of psychiatric disorder, the summary suspension of Dr. Arthur Misischia has been revoked effective April 25, 1994." However, the agency rejected Misischia's demand to delete all reference to a psychiatric evaluation. Misischia sued the agency alleging a violation of the Privacy Act, 5 U.S.C. § 552a. The District of Columbia District Court dismissed the suit as time-barred, concluding that the Privacy Act's two-year statute of limitations began to run when St. John's revised the NPDB report in May 1994. Doe v. Thompson, 332 F. Supp. 2d 124 (D. D.C. 2004).

Ten days later, Misischia filed this lawsuit. His lengthy amended complaint first describes every aspect of the parties' dispute from 1993 to 2003 and then alleges "various adverse professional incidents" involving other physicians with privileges at St. John's hospital. The amended complaint alleges that defendants collectively constituted an "enterprise," that their wrongful actions constituted a "pattern of

racketeering activity," and that the mailings and interstate wire communication cited in the complaint were "predicate acts" under RICO. In addition to three RICO counts, Misischia asserts a state law civil conspiracy claim. The remedies sought include an order declaring that defendants "improperly and without justification" compelled Misischia to undergo a psychiatric examination, submitted an adverse report to the NPDB, terminated his employment and staff privileges, and damaged his reputation in order to taint his testimony as an adverse expert witness in lawsuits against the hospital.

## II. Res Judicata

The district court held that the doctrine of res judicata or claim preclusion bars Misischia's RICO and civil conspiracy claims because he could have raised those claims in his October 1994 state court suit. Though RICO is a federal statute, the preclusive effect of this prior state court judgment is governed by the law of Missouri, the State in which the judgment was rendered. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).

Under Missouri law, a prior judgment bars a subsequent claim arising out of the same group of operative facts "even though additional or different evidence or legal theories might be advanced to support" the subsequent claim. Chesterfield Village v. City of Chesterfield, 64 S.W.3d 315, 320 (Mo. banc 2002) (quotation omitted). The doctrine of claim preclusion bars not only the claims asserted in the first action but also claims "which the parties, exercising reasonable diligence, might have brought forward at the time." Id. at 318 (quotation omitted); see McNeill v. Franke, 84 F.3d 1010, 1012 (8th Cir. 1996). Thus, the critical question here is whether Misischia *could have raised* his RICO and civil conspiracy claims in the prior state court suit. The district court answered this question in the affirmative. The court listed ten letters and wires sent by defendants between August 1993 and July 1994 that are alleged by Misischia to be RICO predicate acts and then explained:

> To state a RICO claim, plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. . . . Mail fraud and wire fraud are among the predicate acts that can form the basis of a RICO claim. Plaintiff's amended complaint identifies several instances of alleged mail or wire fraud that occurred before he filed [the state court action]. His allegation of additional acts after the disposition of [that action] does not alter the fact that the basis for his racketeering claim existed during the pendency of that prior case.

On appeal, Misischia first argues that res judicata bars only claims *identical* to those raised in the prior lawsuit. He relies on cases properly holding that res judicata does not bar claims that did not *exist* when the prior judgment was entered. See generally Baker Group, L.C., v. Burlington N. & S.F. Ry., 228 F.3d 883, 885-87 (8th Cir. 2000). But that is a different issue. The argument that only identical claims are precluded is directly contrary to Chesterfield and other Missouri cases holding that res judicata bars a claim that *could have been raised* in the first lawsuit.

Misischia next argues that he could not have raised his RICO claims in the state court suit because (a) the ten predicate acts that occurred in the year prior to October 1994 were insufficient to prove the requisite pattern of racketeering activity needed to sustain a RICO claim, and (b) defendants committed additional predicate acts causing new injuries after the 2000 judgment in the state court case, namely, the "extortionate" demands in 2001 and 2002 that compelled Misischia to incur legal fees to challenge the false NPDB report. We disagree.

A "pattern of racketeering activity" is defined (rather unhelpfully) in 18 U.S.C. § 1961(5). Before Misischia filed his state court lawsuit, the Supreme Court construed the term as requiring proof of related racketeering predicates that pose a threat of continued criminal activity. H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). Applying this standard, we had affirmed the dismissal of RICO claims based upon predicate acts occurring over a short period of time and threatening no

future criminal conduct. See Thornton v. First State Bank of Joplin, 4 F.3d 650 (8th Cir. 1993); Lange v. Hocker, 940 F.2d 359 (8th Cir. 1991). Here, Misischia's amended RICO complaint alleged ten predicate acts that occurred in the year before he filed the state court action in October 1994. Those acts may or may not have been sufficient to state and prove a RICO violation. But they caused the bulk of Misischia's alleged injuries -- wrongful suspension, a psychiatric evaluation, termination, and the filing of a false NPDB report -- and the alleged predicate acts occurring thereafter added little if anything to his RICO claims. Thus, whether or not sound, the RICO claims could have been raised in October 1994.

In particular, the three "extortionate" letters exchanged with counsel for St. John's in 2001 and 2002, on which Misischia places great emphasis, were so unrelated to the events of 1993 and 1994 as to add nothing to the showing that the earlier acts reflected "a threat of continued racketeering activity," the prerequisite of a RICO claim under H.J., Inc., 492 U.S. at 242. In these circumstances, we agree with the district court that Misischia's RICO claims -- and likewise his state law civil conspiracy claim -- could have been raised in the state court suit and are therefore barred by the prior state court judgment. The question is not whether the alleged predicate acts occurring after the state court judgment would support an independent RICO claim. The question is whether adding those predicate acts to the acts occurring in 1993 and 1994 can revive RICO claims that are otherwise barred. "The doctrine of res judicata would become meaningless if a party could relitigate the same issue . . . by merely positing a few additional facts that occurred after the initial suit." Dubuc v. Green Oak Township, 312 F.3d 736, 751 (6th Cir. 2002).

### III. Other Issues

Having concluded that the district court properly dismissed all of Misischia's federal and state claims with prejudice as barred by the doctrine of res judicata, we need not consider the court's alternative holding that the RICO claims are barred by

RICO's four year statute of limitations.  See generally Rotella v. Wood, 528 U.S. 549 (2000); Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997); Love v. Nat'l Med. Enters., Inc., 230 F.3d 765, 772-75 (5th Cir. 2000); In re Merrill Lynch Ltd. P'Ships Litig., 154 F.3d 56, 58-60 (2d Cir. 1998).

Misischia further argues that the district court abused its discretion in denying him leave to amend his complaint.  This contention is without merit.  In the district court, Misischia raised this issue with a one line request in his brief opposing defendants' motion to dismiss:  "in the alternative, should the Court disagree with Plaintiff, Plaintiff respectfully requests leave to amend his Complaint."  He made no motion for leave to amend and did not explain the substance of his proposed amendment.  Thus, there was no abuse of discretion.  See United States *ex rel.* Lee v. Fairview Health Sys., 413 F.3d 748, 750 (8th Cir. 2005).  Misischia also argues that the district court erred in denying his motion to disqualify St. John's attorneys.  As the entire lawsuit was properly dismissed with prejudice, this issue is moot.

Defendants filed motions for sanctions under Rule 38 of the Federal Rules of Appellate Procedure and for an award of attorneys fees under 28 U.S.C. §§ 1912 and 1927, asserting that Misischia's appeal is frivolous.  Under Rule 38, an appeal is frivolous "when the result is obvious or when the appellant's argument is wholly without merit."  Newhouse v. McCormick & Co., 130 F.3d 302, 305 (8th Cir. 1997) (citations omitted).  Here, while Misischia's attempt to prolong a dispute already litigated in multiple forums is hardly worthy of praise, the res judicata and statute of limitations issues are subject to reasonable dispute, and if Misischia had prevailed on his broadest contentions, the RICO claims could have gone forward against all defendants.  Accordingly, we deny the motions.

The district court's order of dismissal dated August 5, 2005 is affirmed.

_____